RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0344A (6th Cir.)
File Name: 00a0344a.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ROBERT E. WILLIAMS,
   *Plaintiff-Appellant,*

  *v.*

INTERNATIONAL PAPER
COMPANY,
   *Defendant-Appellee.*

No. 98-6514

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 98-02044—Bernice B. Donald, District Judge.

Submitted: November 5, 1999

Decided and Filed: September 27, 2000

Before: KEITH, NORRIS, and CLAY, Circuit Judges.

---

## COUNSEL

**ON BRIEF:** Martin E. Regan, Jr., REGAN & BOSHEA, New Orleans, Louisiana, for Appellant. David F. Dabbs, James A. Sonne, McGUIRE, WOODS, BATTLE & BOOTHE, Richmond, Virginia, Robert D. Hudson, GREENEBAUM, DOLL & McDONALD, Covington, Kentucky, for Appellee.

1

CLAY, J., delivered the opinion of the court, in which KEITH, J., joined.  NORRIS, J. (p. 18), delivered a separate dissenting opinion.

---

**AMENDED OPINION**

---

CLAY, Circuit Judge.  Plaintiff, Robert E. Williams, filed an action against Defendant, International Paper Company ("IP"), for allegedly violating the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. § 1132(a)(1)(B) by denying Williams disability retirement benefits.  The district court granted summary judgment for IP and Williams appealed.  For the following reasons, we **REVERSE** the district court's finding that the Plan Administrator did not act arbitrarily and capriciously in denying Williams' disability retirement benefits.

## I.  Factual Background

Williams worked for IP at its Natchez, Mississippi facility as a wastewater operator from 1968 until he retired in 1993. Williams participated in IP's Pension Plan ("the Plan") during his employment, and was fully vested in the Plan at the time of the events described herein.  Williams was diagnosed has having suffered a major stroke and a series of passing strokes on February 17, 1993, while working at IP which left Williams paralyzed on his left side with speech difficulties and, according to Williams' attending physician, "totally disabled."[1]   (J.A. at 274.)  Williams was hospitalized for several days but did not return to work.  Shortly thereafter,

---

[1] Specifically, Williams' attending physician diagnosed Williams in 1993 as having suffered a "CVA" or cerebral vascular accident, commonly known as a major stroke, as well as "TIA" or transischemic attacks, commonly known as passing strokes or mini-strokes, on February 17, 1993.  (J.A. at 274.)  *See* STEDMAN'S MEDICAL DICTIONARY 8, 100 (23d ed. 1976); ISSELBACHER, ET AL., HARRISON'S PRINCIPLES OF INTERNAL MEDICINE 1922-23 (9th ed. 1980).

———————

**DISSENT**

———————

ALAN E. NORRIS, Circuit Judge, dissenting. Although I agree with the majority's position that the letters of Drs. Ahmed and Gold should have been considered, since they appear to shed light on plaintiff's condition while employed by IP, that evidence ought not be weighed by this court rather than the Plan Administrator. Unless a determination that plaintiff is still not entitled to benefits in light of the new evidence would be arbitrary and capricious, this court may not weigh the evidence itself and grant plaintiff benefits. *See University Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 841 (6th Cir. 2000) (discussing earlier remand in same case to Plan Administrator to reweigh evidence when some erroneous evidence was initially considered by Plan Administrator). It is not at all clear to me that a finding that the new evidence does not entitle plaintiff to benefits would be arbitrary and capricious.

Accordingly, I respectfully dissent.

Williams applied for and received short-term disability benefits from IP.[2]

On December 8, 1993, Williams applied for permanent disability retirement benefits. IP sent Williams' file to its outside consultant, Dr. H. Michael Belmont at the Life Extension Institute in New York, New York requesting an evaluation of whether Williams was totally disabled. Dr. Belmont reviewed the file and prepared a memorandum wherein he concluded that Williams was not totally disabled within the meaning of the Plan on December 21, 1993. The Plan Administrator subsequently denied Williams' disability claim.

On January 18, 1994, a disability determination letter was prepared by the pension office  stating in relevant part:

> Please furnish Mr. Williams a copy of this memo and advise him of his rights to appeal our decision. Should Mr. Williams decide to appeal, he should submit evidence which would substantiate his claim of total and permanent disability.

(J.A. at 128).

On June 8, 1994, Williams appealed the denial of his benefits. IP forwarded the file to Dr. Belmont on June 24, 1994, for further review. On July 6, 1994, Dr. Belmont concluded once again that Williams did not meet the total disability standard required by the Plan. As a result, IP denied Williams' disability claim again. On September 7, 1994, an internal memorandum regarding Williams' disability determination was prepared by the pension office stating in part:

———————

[2]Short-term disability benefits are provided for up to thirty-nine weeks under a non-ERISA plan that is governed by different eligibility standards and are not at issue in this case.

All the evidence in this case has been thoroughly evaluated, including any additional information received since the original submission of the claim. A careful review has been made, and we have concluded that the request for Disability Retirement must be denied . . . . Please furnish Mr. Williams with a copy of this memo and advise him of his rights to appeal our decision. Should he decide to appeal, he should submit evidence which would substantiate his claim of total and permanent disability.

(J.A. at 183).

On August 21, 1996, IP received a letter from United States Senator Trent Lott requesting that IP reevaluate Williams' disability claim. As a result, IP initiated a second appeal of the decision to deny Williams disability retirement benefits on August 28, 1996. IP forwarded Williams' file for evaluation to Wausau Insurance Company, its outside consultant in Wausau, Wisconsin, on August 28, 1996.

During Williams' second appeal, he submitted additional medical evidence consisting of two letters. One of the letters, dated May 15, 1996, was from Dr. Aziz Ahmed, and stated in relevant part as follows:

It is important to note that Mr. Robert Williams has suffered a major stroke affecting his left side that has rendered his left side, hand, upper and lower extremities and his face completely disabled. He has severe physical limitations in terms of walking and holding objects. On account of his facial nerve paralysis, he has difficulty speaking clearly, also. His balance and safety are also of concern. If he is allowed to be in a situation where he needs to walk up and down stairs or handle machinery, that could be detrimental to him or to his health. On account of his speech problem, he has a difficult time expressing his thought process to other people. His age also needs to be under consideration being 50 years old and suffering from high blood pressure that tends to run up and down during his previous visits with me. It

could not be considered. The additional medical evidence clearly establishes that Williams was disabled within the meaning of the Plan. There is no evidence to the contrary in the record and there is no factual dispute that would prevent entry of judgment in Williams' favor. Therefore, we **REVERSE** and **REMAND** with instructions to the district court to grant Williams his retirement benefits due under the Plan, along with interest and other damages, if any, and/or attorney's fees[6].

---

[6] We note that Plaintiff failed to file a cross motion for summary judgment, however a district court may enter summary judgment *sua sponte* under appropriate circumstances. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) (holding that a district court may enter summary judgment *sua sponte* "so long as the losing party was on notice . . . ."); *see Grand Rapids Plastics Inc. v. Lakian*, 188 F.3d 401, 407 (6th Cir. 1999) (holding proper for district court to enter summary judgment *sua sponte* when party did not move for summary judgment); *see also Salehpour v. University of Tennessee*, 159 F.3d 199, 204 (6th Cir. 1998).

district court's decision on the ground that the conclusion to terminate the plaintiff's benefits was unreasonable based on its selective review of the evidence. *Id.* Similarly, the Plan Administrator in this case selectively reviewed the medical evidence that Williams submitted by instructing his consultants not to review the additional medical evidence. All the while, the Plan Administrator had informed Williams that it reviewed all medical information, including the newly submitted information, when in fact he discounted certain information that would have been favorable to Williams. Hence, like *Govindarajan*, the Plan Administrator's selective review of Plaintiff's additional medical evidence was an unreasonable basis to deny Williams' disability benefits, and remand is not necessary.

It is also appropriate to retroactively grant disability benefits without remanding the case where there are no factual determinations to be made. In *Canseco v. Construction Laborers Pension Trust for Southern California*, 93 F.3d 600, 609 (9th Cir. 1996), the Ninth Circuit held that a remand is inappropriate when there are no factual determinations to be made. Here, the district court adjudicated the issue of whether Plaintiff was disabled when it concluded that even if it were to consider the two additional letters, they would not render Williams as disabled as they did not reference the length of Williams' disability. Therefore, having concluded that the district court erred in finding that Williams was not disabled, there are no factual determinations to be made, and the proper course of relief is to retroactively grant Williams his disability benefits. *See id*; *see also Godfrey v. Bellsouth Telecomms. Inc.*, 89 F.3d 755, 760-61 (11th Cir. 1996) (holding that retroactive benefits was the proper remedy where district court made a finding that claimant was disabled).

### III.  Conclusion

In sum, we conclude that as a matter of law, the Plan Administrator acted arbitrarily and capriciously in concluding that the additional medical evidence that Williams submitted

makes him a difficult candidate for vocational training because, again, stress can aggravate his high blood pressure and that could cause further stroke. It is to be noted that I have known Mr. Robert Williams personally for some time and he has tried to get some jobs, but his main problem is that his physical limitation has barred him from other people hiring him for any kind of jobs.

(J. A. at 278.)  The second letter dated May 24, 1996, was from Williams' physician, Dr. Gold, and stated in relevant part as follows:

Mr. Williams is a patient of mine who had a stroke which caused paralysis involving his left side. He has limitations in walking and would be detrimental to his health. He also has multiple other medication [sic] problems that his other physicians are caring for. At this point from my neurologic point of view I believe he's disabled. . . .

(J. A. at 277.)

The Plan Administrator instructed the consultants in Wausau, Wisconsin not to consider the two additional letters from Dr. Ahmed and Dr. Gold in evaluating Williams' claim for disability benefits. After reviewing Williams' file without the additional medical evidence, IP rejected Williams' request for disability benefits and sent Williams a denial letter on December 6, 1996 stating in part:

Upon receipt of your request for Disability Retirement and following your submission of further medical evidence, your claim was independently reviewed by our medical consultants . . . . All the evidence in your case has been thoroughly evaluated, including any additional information received since the original submission of your claim . . . . Should you decide to appeal, you should submit additional medical evidence which would substantiate your claim of total and permanent disability.

(J.A. at 194).

IP claims that it did not consider Williams' additional medical evidence in support of his claim, on the basis that these letters indicated that Williams suffered the stroke which left him totally disabled *after* he left IP's employ, thereby rendering Williams ineligible for disability benefits. Williams, on the other hand, contends that the 1996 letters make reference to the stroke that he suffered in 1993, that he has not suffered a major stroke since that time, that his current state of disablement is a result of the stroke that he suffered in 1993, and that his disablement today is as it was in 1993.

On January 16, 1998, Williams filed a lawsuit pursuant to ERISA, §502(a)(3), 29 U.S.C. §1132 (a)(1)(B), alleging that Defendant wrongfully denied him disability benefits under the retirement plan of IP. On September 9, 1998, IP filed a motion for summary judgment. The district court granted IP's motion. In granting summary judgment, the district court acknowledged that the additional letters submitted by Williams were not considered by the Plan Administrator at the time of its final decision, inasmuch as the letters reflected that Williams suffered a stroke after terminating his unemployment with IP, and that the Plan only provided coverage for disabilities incurred while under IP's employ. As such, the district court declined to consider the letters in reaching its decision. The district court further concluded that even if it were to consider the letters, its decision would not be different as neither letter made reference to the length of Williams' disability.

## II. Discussion

### A.

We review the district court's grant of summary judgment in an action involving an ERISA claim *de novo*. *Killian v. Healthsource Provident Adm'rs*, *Inc.*, 152 F.3d 514, 520 (6th Cir. 1998). Summary judgment is appropriate so long as "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

consultants been properly instructed and had they considered the two letters submitted by Williams to substantiate his claim, they would have opined that Williams was disabled within the meaning of the Plan. As such, we hold that the district court's finding is clearly erroneous.

While we believe that the proper remedy is to grant Williams his disability benefits, the dissent argues that the case should be remanded.[5] Indeed, remand is the proper remedy in some cases. *See Gallo v. Amoco Corp.*, 102 F.3d 918 (7th Cir. 1996) (remanding because adequate findings of fact were not made by court or agency); *Miller v. United Welfare Fund*, 72 F.3d 1066, 1073-74 (2d Cir. 1995) (remanding when it was unclear that the claim should be granted). However, in other cases, where the review of the medial evidence was arbitrary and capricious or unreasonable, the proper remedy is to retroactively grant benefits without a remand. *See Govindarajan v. FMC Corp.*, 932 F.2d 634, 637 (7th Cir. 1991); *see also Quinn v. Blue Cross and Blue Shield Ass'n,* 161 F.3d 472, 477 (7th Cir. 1998); *Grossmuller v. International Union, United Auto., Aerospace & Agric. Implement Workers of Am., UAW*, 715 F.2d 853, 858-59 (3d Cir. 1983). Such is the case here.

In *Govindarajan v. FMC Corp.*, 932 F.2d 634, 637 (7th Cir. 1991), the plaintiff was granted retroactive benefits because the termination of his benefits was based upon the selective review of medical evidence. The Seventh Circuit upheld the

---

[5]The dissent relies upon *University Hospitals of Cleveland v. Emerson Electric Co.*, 202 F.3d 839, 841 (6th Cir. 2000) in support of its position that the appropriate remedy in this case is a remand for the Plan Administrator to consider the new evidence. However, we find *University Hospitals* distinguishable in that there the Plan Administrator *never* had an opportunity to review the evidence in question. In the case at hand, the Plan Administrator *had* the opportunity to consider the additional medical evidence, and he actually considered the content of the letters as they relate to Williams' case when he opined that the letters made reference to a subsequent stroke and therefore were of no assistance to Williams. In light of the Plan Administrator's opinion, we find that unlike in *University Hospitals*, remand would be futile.

requiring Williams to perform such activities could be detrimental to him or his health; that as a result of his facial nerve paralysis, Williams has difficulty speaking clearly; and that his physical limitations have prevented him from being hired for any type of employment. (J.A. at 278.) Additionally, Dr. Gold echoed Dr. Ahmed's view that Williams' limitations in walking would be detrimental to his health, and that Williams was disabled. (J.A. at 277.) Significantly, Dr. Gold and Dr. Ahmed described Williams' medical condition as serious and debilitating; neither indicated that Williams' condition has improved since his series of strokes; nor did they indicate that his condition would improve substantially from medical treatment or the passage of time.

Although the letters do not expressly state that Williams' disability is "likely to be permanent," the left side of his body is described as "completely disabled" thereby compromising his balance, safety, and ability to walk and speak. Moreover, Williams' myriad of health problems, as set forth in the physicians' letters, clearly render him unable to work indefinitely. Dr. Ahmed indicated that Williams' age and high blood pressure are of concern, and because stress can aggravate his high blood pressure and cause further strokes, he is "a difficult candidate for vocational training" whose physical limitations have barred him from other jobs. If curtailment of a major life activity and the ability to work in the foreseeable future can fairly be said to describe a condition of a disability that is "likely to be permanent," then Williams is totally and permanently disabled by any measure. The conclusion that Williams' disability is "likely to be permanent" is made all the more apparent by the fact that there is no medical evidence to contradict the conclusions of Dr. Ahmed and Dr. Gold, both of whom examined Williams.

When read together, it would be unreasonable to conclude that the two letters from Dr. Ahmed and Dr. Gold, fail to demonstrate that Williams' disability is "likely to be permanent," as required by the language of the Plan. Furthermore, it is reasonable to conclude that had the

*Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997) (quoting FED.R.CIV.P. 56(c)). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). To determine whether summary judgment is appropriate, we view the evidence and draw all reasonable inferences therefrom in a light favorable to the non-moving party. *Id*.

A denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *See Firestone v. Bruch*, 489 U.S. 101, 109 (1989). In *Firestone*, the Supreme Court held that, under ERISA, absent the express delegation of discretion to a plan trustee, a court should conduct a *de novo* review of the trustee's benefit determination. *Id*. at 115. Conversely, where an ERISA plan expressly affords discretion to trustees to make benefit determinations, a court reviewing the plan administrator's actions should apply the arbitrary and capricious standard of review. *Id*. at 110-12.

This Court has specifically interpreted *Firestone* to require that a plan "expressly give discretionary authority to the administrator." *Perry v. Simplicity Eng'g*, 900 F.2d 963, 965 (6th Cir. 1990). However, the Court has also recognized that a finding of such authority does not depend on the plan's use of the word "discretionary" or any other magic word. *Johnson v. Eaton Corp.*, 970 F.2d 1569, 1571 (6th Cir. 1992). Furthermore, discretion is not an all-or-nothing proposition, such that a plan can give an administrator discretion with respect to some decisions but not others. *See Anderson v. Great West Life Assurance Co.,* 942 F.2d 392, 395 (6th Cir. 1991).

On appeal, Williams contends that although the Plan Administrator had discretion with respect to some decisions, the Plan Administrator did not have the discretion to determine eligibility for disability retirement. Specifically,

Williams argues that the language in the plan defining disability divests the discretion from the plan administrator to determine eligibility for disability retirement benefits.[3] Mindful that a plan administrator may have discretion with respect to some decisions and not all; and having thoroughly reviewed the Plan, we find that the language in the Plan grants the Plan Administrator discretion to determine eligibility for disability retirement benefits.

Williams misconstrues the unambiguous language of the Plan. When interpreting ERISA plan provisions, general principles of contract law dictate that we interpret the provisions according to their plain meaning in an ordinary and popular sense. *See Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998). In applying the "plain meaning" analysis, we "must give effect to the unambiguous terms of an ERISA plan." *Id*. (quoting *Lake v. Metropolitan Life Ins. Co.*, 73 F.3d 1372, 1379 (6th Cir. 1996)). Reading the language in an ordinary and popular sense, the Plan clearly gives the Plan Administrator authority to determine eligibility for disability benefits inasmuch as the Plan Administrator must "find that the Disability is likely to be permanent during the remainder of the Participant's life." (J.A. at 120). Moreover, we have held in similar cases that the plan administrator has discretionary authority. *See Perez*, 150 F.3d at 557 (claimant must provide "satisfactory evidence" as part of proof of claim); *Yeager v. Reliance Standard Life Ins. Co.,* 88 F.3d 376, 380-81 (6th Cir. 1996) (claimant must submit "satisfactory proof of Total Disability to us"); *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 983 (6th Cir. 1991) (disability determined "on basis of medical evidence satisfactory to the Insurance Company"). Contrary to Williams' proposition, the requirement of a physician certifying that a participant is disabled does not dilute the

---

[3]Benefit Schedule A-1, the relevant retirement plan, states in part that a participant can obtain disability benefits "provided that the Plan Administrator finds, and a physician or physicians designated by the Plan Administrator certify that the Disability is likely to be permanent during the remainder of the Participant's life" (J.A. at 120.)

### C.

Although the district court initially declined to consider the additional evidence submitted by Williams, it found that consideration of the two additional letters from Dr. Ahmed and Dr. Gold would not have changed the outcome in any event because the letters do not specifically reference the duration of Williams' disability -- i.e., the letters do not expressly describe Williams' condition as being "totally and permanently" disabled. In light of the evidence provided, and the plain language of the Plan, we disagree with the district court's finding.

Factual findings inherent in deciding an ERISA claim are reviewed for clear error. *See Simpson v. Ernst & Young*, 100 F.3d 436, 440 (6th Cir. 1996); *see also Wilcott v. Matlack, Inc.*, 64 F.3d 1458, 1459-60 (10th Cir. 1995) (finding that "whether [plaintiff] [is] totally and permanently disabled from any kind of work" is a question of fact). A finding of fact is clearly erroneous only when although there may be some evidence to support the finding, "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer*, 470 U.S. 564, 573 (1985).

Pursuant to the Plan, an individual does not qualify for disability benefits unless the disability "is likely to be permanent during the remainder of the Participant's life." (J.A. at 120.) Contrary to the district court's opinion, we believe that the two additional letters submitted by Williams establishes that he was disabled within the meaning of the Plan. For example, the letter from Dr. Ahmed stated that Williams' stroke rendered his left side "completely disabled";[4] that Williams has severe physical limitations in terms of walking and holding objects, and that situations

---

[4]Complete[ly] is defined as "brought to an end" or "concluded." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 235 (10th ed. 1993). As noted, ERISA plan provisions are interpreted according to their plain and ordinary meaning. *See Perez*, 150 F.3d at 556.

March 16, 1998, at regular intervals in between, Dr. Gold consistently refers to the physical problems that Williams suffered as a result of his stroke in 1993, such as his left-side paralysis. Conspicuously absent from the progress notes of this four-year period of regular office visits is any mention of Williams having suffered a second major stroke; on the other hand, conspicuously present in these same notes is Dr. Gold's opinion that Williams is unable to work. (J.A. at 207-09.) Interestingly, Dr. Gold's opinion as to Williams' physical state as set forth in the 1996 letter, as compared to his opinion as to Williams' physical state as set forth in his 1993 statement of disability, indicates the same findings of left-side paralysis and total disability.

In a similar vein, Dr. Ahmed's description of Williams' physical condition as espoused in his 1996 letter, as compared to a report dated February 17, 1993, from Daniel H. McNeil of the radiology department at Our Lady of the Lake Regional Medical Center to whom Williams was referred upon admission, indicates like findings such as Williams experiencing numbness on his left side, difficulties in walking, and difficulties in speaking such as slurred speech. (J.A. at 225-26.)

Simply put, although there is abundant evidence in the record to support Williams' claim that the 1996 letters from Dr. Gold and Dr. Ahmed support his contention that these letters refer to the single major stroke that he suffered in 1993, the record is devoid of any evidence in support of IP's contention that these letters indicate that Williams suffered a subsequent stroke. Accordingly, because we find that IP has not "offer[ed] a reasoned explanation, based on the evidence, for its outcome," and because we are unable to infer such an explanation based on the evidence, we hold that the Plan Administrator's decision not to consider the 1996 letters from Dr. Gold and Dr. Ahmed was arbitrary and capricious. *See Davis*, 887 F.2d at 693. We next consider the effect of these letters on Williams' case before us.

discretionary authority of the Plan Administrator to determine eligibility. Accordingly, we hold that the district court was proper in applying the arbitrary and capricious standard of review.

### B.

Having determined the appropriate standard of review, we now address whether the Plan Administrator acted arbitrarily and capriciously in this case. This Court has noted that the arbitrary and capricious standard is the least demanding form of judicial review of administrative action. *See Davis v. Kentucky Fin. Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1993). When applying the arbitrary and capricious standard, the Court must decide whether the plan administrator's decision was "rational in light of the plan's provisions." *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988). Stated differently, "when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis*, 887 F.2d at 693.

On appeal, Williams contends that the Plan Administrator acted arbitrarily and capriciously by failing to consider additional medical evidence that he submitted during the second appeal of his denial of benefits -- the two letters submitted by Dr. Ahmed and Dr. Gold -- on the basis that these letters indicate that Williams suffered the disabling stroke after he left IP's employ. In advancing his argument, Williams claims that the letters make reference to a single stroke -- the stroke which he suffered in 1993 -- and that there is no evidence in the record to indicate that he suffered another stroke after leaving IP's employ. After reviewing the language of the Plan and the evidence on record, we hold that the Plan Administrator acted arbitrarily and capriciously in failing to consider the additional medical evidence.

The relevant terms are defined within the plan. Pursuant to Benefit Schedule A-1, the governing provision of the Plan, "Disability" or "Disabled" means:

a total disability which is a medically determinable physical or mental impairment which renders the *Participant* incapable of engaging in any substantial gainful employment activity productive in nature, provided that the Plan Administrator finds, and a physician or physicians designated by the Plan Administrator certify, that the Disability is likely to be permanent during the remainder of the *Participant*'s life.

(J. A. at 120) (emphasis added). Under Article 1, § 1.39 of the Plan, "Participant" is defined as "any Eligible Employee who becomes covered by the Plan as provided in Article II and shall include any individual who has separated from service or ceased to be an Eligible Employee for whom there is still a liability under the Plan." (J.A. at 52.) Article I, § 1.54 defines "Separated from Service" as "any Employee['s] . . . []death, retirement, resignation, discharge or any absence that causes him to cease to be an Employee." (J.A. at 54.) Benefits Schedule A-1 defines "Eligible Employee" as "any Employee covered by the Primary Mill Joint Pension Council who is employed at [Natchez Mill]." (J.A. at 120-21.)

In other words, the express language of the Plan allows for a "Participant" to collect disability benefits. A "participant" is defined as "any Eligible Employee who becomes covered by the Plan as provided in Article II *and shall include any individual who has separated from service or ceased to be an Eligible Employee for whom there is still a liability under the Plan*." The Plan defines an "Eligible Employee" as "any Employee covered by the Primary Mill Joint Pension Council who is employed at [Natchez Mill]; the Plan includes one who retires in the definition of "separated from service." Therefore, if the evidence indicates that Plaintiff suffered the disabling stroke in 1993 while he was employed by IP, he was an "Eligible Employee" at the time. The fact that he retired but was still left totally disabled as a result of the 1993 stroke, makes him an individual who was "separated from service" "for whom there is still a liability under the Plan," which

therefore makes him a Participant entitled to disability benefits.

Accordingly, the relevant inquiry under the express language of the Plan comes down to whether the Plan Administrator's decision that the additional medical evidence could not be considered – because the opinions stated therein were based on Williams having suffered a subsequent stroke after he left IP's employ – was reasonable based on the evidence. *See Davis*, 887 F.2d at 693. As detailed below, we hold that the Plan Administrator's interpretation was not reasonable based upon the record.

IP's double standard and circular reasoning aside – i.e., IP is allowed to use the additional medical evidence to its benefit, but Williams is not allowed to do the same – we note that the 1996 letter from Dr. Ahmed, Williams' medical doctor, describes Plaintiff's condition as being completely disabled on the left side of his body *exactly* as Williams' neurologist and attending physician, Dr. Gold, described Plaintiff in August of 1993 as a result of the February 17, 1993, stroke, thereby supporting the fact that Plaintiff's physical disability was a product of the stroke that he suffered in 1993 while employed by IP. (J.A. at 274, 278.) Furthermore, apart from IP's unsupported interpretation of these letters, the record is completely devoid of any proof that Plaintiff suffered a subsequent stroke after leaving IP's employ, and IP has not attempted to supplement the record with any proof such as additional medical records or hospital stays.

Indeed, it is reasonable to conclude that if Plaintiff had suffered a subsequent disabling stroke there would be some documented evidence of the event. However, the only documentation of Plaintiff having suffered a major stroke is the report from, Dr. Gold, dated August 25, 1993, expressly stating that Williams suffered a "CVA" – major stroke – on February 17, 1993, which left him paralyzed on his left side and "totally disabled." (J.A. at 274.) In fact, in a series of eight progress notes dating from October 3, 1994 through