**NOT RECOMMENDED FOR PUBLICATION**
File Name: 05a0973n.06
Filed: December 14, 2005

**No. 04-2436**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

TRUSTEES OF THE B.A.C. LOCAL 32
INSURANCE FUND; TILE, TERRAZZO &
MARBLE INDUSTRY PENSION FUND;
GREAT LAKES CERAMIC TILE COUNCIL
FUND; TILE, TERRAZO & MARBLE
I N D U S T R Y   S U P P L E M E N T A L
UNEMPLOYMENT BENEFIT FUND; TILE,
TERRAZZO & MARBLE INDUSTRY
VACATION AND HOLIDAY FUND; AND
THE B.A.C. UNION LOCAL NO.32,

      Plaintiffs-Appellants,

v.

NORWEST TILE COMPANY, INC., MIAL
CONTRACTING, INC., AND MIAL
PROPERTIES, LLC,

      Defendants-Appellees.

                                  /

**ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN**

BEFORE:    SILER, CLAY, AND ROGERS, Circuit Judges.

    **CLAY, Circuit Judge.**  Plaintiffs, the Trustees for the Tile, Terrazzo & Marble Industry

Fringe Benefit Funds, et. al. ("The Funds") appeal the district court's order granting summary

judgment to Defendants, Norwest Tile Company, Inc., et. al. ("Norwest"), alleging that Defendant

Norwest is bound by a current multiemployer collective bargaining agreement ("CBA"), and

therefore obligated to contribute to the Funds. For the reasons set forth below, we **AFFIRM** the district court's order.

## I. BACKGROUND

Norwest is a residential tile contractor doing business in the Detroit metropolitan area. According to Defendants, the company currently has only two employees, Stephen Sciantarelli, and its principal shareholder, Russell D'Angelo. Sciantarelli installs the tile and D'Angelo supervises the work.

Norwest was a signatory to the 1987-1989 Detroit area tile contract between the BAC Local Union 32 ("Union") and the Employer Associations. This agreement, among other things, required Norwest to make fringe benefit contributions to the Plaintiff Funds. Norwest did not sign any subsequent contracts, but it adhered to the contracts and contributed to the Funds on behalf of its employees. At some point, Norwest apparently ceased making contributions and a dispute arose between the parties over money owed to the Funds.

On May 6, 2002, the Funds filed suit against Norwest and Russell D'Angelo to compel an audit and to recover fringe benefit contributions that were allegedly owed to the Funds under the 1998-2003 CBA between the Union and the Associations.

The parties reached a settlement agreement in early March 2003. The proposed settlement agreement was forwarded by Plaintiffs' counsel to Defense counsel on March 20, 2003. On March 28, 2003, D'Angelo sent the Union notice of Norwest's withdrawal from multiemployer bargaining and of its intent to negotiate a new contract individually with the Union. The letter stated in pertinent part, the following:

Please treat this letter as notice by Norwest Tile Company of withdrawal by it from any employer association for purposes of collective bargaining with your union . . . Norwest Tile will not participate in any negotiations between any employer association and Local 32 and will not be bound by any new agreement reached between Local 32 and any employer association. Rather Norwest desires to negotiate a new collective bargaining agreement with Local 32 on an individual basis.

On March 31, 2003, Plaintiffs' counsel, Edward J. Pasternak, sent a fax communication to Defendant Norwest's counsel, Nancy Harris Pearce, indicating that it was unacceptable to the Funds' Trustees for Norwest to negotiate individually with the Union. Pearce responded to this communication by advising Plaintiffs' counsel during a telephone conversation, that the parties' settlement agreement did not require Defendant Norwest to execute the subsequent contract; that Defendant Norwest could not sign the subsequent agreement since such agreement did not exist and was still being negotiated; and that the trustees of the fringe benefit funds could not compel Norwest to sign the subsequent agreement.

The settlement was finalized on April 16, 2003. In addition to a cash payout to the Funds, the terms of the settlement required Norwest to recognize the Union as the exclusive bargaining representative of its workforce, sign the 1998-2003 CBA with the Union, and submit upon reasonable notice its books and records to an audit by Plaintiff Funds' auditors on a periodic basis as may be required by the CBA. The agreement also included an "Evergreen" or rollover clause stating the following:

This agreement shall remain in force and effect through May 31, 2003, and shall continue thereafter unless there has been given not less than 60 days and not more than 80 days advance notice by Registered or Certified Mail, by either party hereto, of the desire to modify and amend this Agreement through negotiations. In the absence of such notice, this Agreement shall renew from year to year thereafter until the aforesaid advance notice is given.

Lastly, the agreement contained a clause in which the parties agreed to discharge and release each other from all future claims related to this matter. The signed documents, along with a check and the promised employee benefit waivers were forwarded to Plaintiffs' counsel on April 30, 2003.

In May 2003, Pearce contacted Pasternak via telephone to inquire as to why the order of dismissal had not been submitted to the court, in accordance with the terms of the agreement. Pasternak replied that the matter had not yet been submitted for dismissal since Norwest had not signed or agreed to sign the 2003-2008 CBA. Pearce indicated that signing the 2003-2008 agreement was not part of the settlement, reiterated that Defendants had complied with all terms of the settlement, and insisted that the order of dismissal be submitted to the court.

Pearce followed this conversation with a letter dated June 10, 2003 restating the before-mentioned points, and expressing ongoing concern about the fact that the order of dismissal had not been submitted to the court. She indicated that Defendant Norwest would seek a motion to compel entry of the order of dismissal if necessary. Plaintiffs' counsel subsequently submitted the order for entry on June 19, 2003.

In late June 2003, D'Angelo wrote to the Union renewing Norwest's request to negotiate a new CBA with Local 32, and Norwest's lack of desire to participate in any association-wide agreement. In response, D'Angelo received a letter from Pasternak on June 30, 2003, stating that Norwest had recently executed a new CBA as part of the settlement of the 2002 lawsuit, and that Norwest has no right to bargain on its own with the Union. Pasternak also enclosed a copy of the 2003-2008 agreement, which he insisted that D'Angelo sign. Defendant Norwest's counsel, Robert Finkel, responded a couple of days later via letter with the following:

4

> What Mr. D'Angelo was requested to sign and in fact did sign was the June 1, 1998 -
> May 31, 2003 CBA. Indeed, at the time a settlement was reached with the BAC
> Funds, a 'new agreement' was not even in existence. Moreover you should be aware
> that within the limits specified in Article XII of the 1998-2003 CBA, Mr. D'Angelo
> gave written notice to the Union that Norwest would not be bound by any new
> agreement entered into between Local 32 and any employer association and that it
> desired to bargain a new agreement with the Union on an individual basis.
> Accordingly, Norwest does not believe it has any obligation to execute and/or
> implement the new association agreement with B.A.C. Local 32.

On July 28, 2003, Norwest's only bargaining unit employee, Stephen Sciantarelli, resigned his membership in the Union. D'Angelo notified the Union of Sciantarelli's resignation.

Plaintiffs then asked Norwest to submit to a payroll audit for the period of April 16, 2003 through July 2003. Norwest produced records only for April and May 2003. Norwest refused to produce any records beyond May 31, 2003. On October 6, 2003, the MIAL Companies were served with the Complaint in this action.

The Funds filed the complaint from which this appeal is taken on September 25, 2003 in the United States District Court for the Eastern District of Michigan. Plaintiffs brought suit under ERISA §§ 502 and 515, 29 U.S.C. §§ 1132 and 1145, alleging that pursuant to the 2003-2008 collective bargaining agreement, Norwest was required to timely submit fringe benefit contributions to the Funds and submit to an audit of its payroll records in order to confirm these contributions. Plaintiffs further allege that Norwest was operating potential alter-ego entities, MIAL Contracting and/or MIAL properties in order to evade its contribution obligations. On November 6, 2003, Defendant Norwest filed a motion on behalf of MIAL Contracting to dismiss the complaint.

Norwest filed a motion to dismiss on January 9, 2004. The Funds replied and filed a motion for partial summary judgment on January 23, 2004, requesting that the Court enter an order finding

that Norwest is bound by the 2003-2008 CBA, or in the alternative, the 1998-2003 Agreement; and enter an order compelling Norwest to submit to an audit of their books and records by the Fund.

The district court held a hearing on all motions on March 15, 2004. At the hearing, the district court denied Defendants' motions for sanctions and motions to dismiss. On April 12, 2004 the district court denied the Funds' motion for partial summary judgment, stating that it was not yet prepared to decide the issue, and ordered the parties to conduct discovery.

Again cross motions of summary judgment were filed. On September 28, 2004, the district court entered a Memorandum Opinion and Order granting Defendant's motion for summary judgment and denying Trustees' motion for partial summary judgment. The district court indicated that it found no conduct or agreement nullifying Norwest's March 28, 2003 notice to withdraw from the CBA, and as such, held that Norwest was not bound to a CBA beyond May 31, 2003.

The Funds appeals the district court's order granting Defendants' motion for summary judgment.

## II. DISCUSSION

"We review the district court's grant of summary judgment in an action involving an ERISA claim *de novo*." *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000) (citing *Killian v. Healthsource Provident Adm'rs, Inc*., 152 F.3d 514, 520 (6th Cir. 1998)). "Summary judgment is appropriate so long as the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Williams v. Int'l Paper*, 227 F.3d at 710 (quoting *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997)). When determining whether

to reach this conclusion, this Court views the evidence and draws all reasonable inferences in the light most favorable to the non-moving party. *Id*; *see also Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir. 1998).

We agree with the district court's conclusion that Defendants have no contractual obligations to Plaintiffs pursuant to the current CBA. The crux of Plaintiffs' argument seems to be that since the signing of the 1998-2003 agreement came after the March 28, 2003 withdrawal letter, the signing of the agreement effectively repudiated the earlier withdrawal. Plaintiffs further argue that because Norwest did not thereafter provide timely notice of its intent to withdraw, Norwest became bound to the 2003-2008 agreement pursuant to the earlier agreement's Evergreen clause. Neither argument is persuasive.

A.

Defendant Norwest's March 28, 2003 notice did constitute unequivocal and effective withdrawal from the multiemployer bargaining unit, and thus Defendant has no obligation to make further contributions. "Under ERISA § 515, employers . . . who are 'obligated to make contributions to a multiemployer plan' (like the Funds' plan) must as a matter of federal law 'make such contributions.'" *Plumbers & Pipefitters Local Union No. 572 Health and Welfare Fund v. A & H Mechanical Contractors, Inc.*, 100 Fed. Appx. 396, 400 (6th Cir. 2004) (unpublished) (citing 29 U.S.C. §1145). "An employer's contractual obligation to make these contributions may arise from a collective bargaining agreement, including one involving several employers." *Id*. However, "'an employer may abandon' a multiemployer bargaining unit and may terminate its obligations to make ERISA plan contributions 'if it unequivocally withdraws from the association . . . by communicating

7

the intent to withdraw to all parties.'" *Id*. (quoting *Sheet Metal Workers' Int'l. Ass'n Local 19 v. Herre Bros. Inc*., 201 F.3d 231, 244 (3d Cir. 1999); *see also N.L.R.B. v. Sklar*, 316 F.2d 145, 150 (6th Cir. 1963).

In *Plumbers*, the employer sent a letter to both the Union and the Association advising that the company was withdrawing from the association and that it would no longer be bound by the CBA. However, the plaintiff Funds claimed that the termination letter was not effective, and therefore A-H was bound to the new agreement by virtue of the Evergreen provision in the old expired agreement. This Court upheld the district court's finding that "A-H's termination notice fulfilled the requirements of the 1998 Agreement for termination and that A-H did not become bound by the 2001 Agreement." *Plumbers*, 100 Fed. Appx. at 401. In reaching this conclusion, the Court considered all evidence that supported the contention that A-H's withdrawal was both unequivocal and timely, including the fact that the letter sent by A-H properly expressed their intent to (1) terminate the 1998 Agreement; (2) not be bound by any future agreements; and (3) withdraw from both past and future CBAs. *Id*.

Similarly, in the present case, Defendant Norwest timely and unequivocally withdrew its bargaining rights from the Association and indicated its intent to bargain independently with the Union. D'Angelo's notice letter of March 28, 2003 stated clearly, "Please treat this letter as notice by Norwest Tile Company of withdrawal by it from any employer association for purposes of collective bargaining with your union . . . ." He went on to say that "Norwest Tile . . . will not be bound by any new agreement . . . rather Norwest desires to negotiate a new collective bargaining agreement . . . on an individual basis." Norwest did not subsequently participate in any negotiations

for the new agreement. Norwest merely signed the expiring 1998-2003 CBA as part of the settlement agreement. Moreover, Norwest repeatedly reiterated (like the defendant in A&H) in writing to both the Association and the Union that it did not wish to be bound by any subsequent agreement. As such, Norwest unequivocally and timely withdrew from the CBA and is not bound by the current agreement.

B.

Defendant's subsequent conduct was not inconsistent with its stated intent to withdraw from the agreement. Much of the arguments of both Plaintiffs and Defendants in this case have to do with whether or not this Court should agree with the district court that the facts at issue here are more analogous to *Haas Elec. v. N.L.R.B.*, 229 F.3d 23, 28 (1st Cir. 2002) rather than *Herre Bros.*, 201 F.3d 231 (two cases from outside the Sixth Circuit). The two circuits are in agreement that "an employer's withdrawal from multiemployer bargaining is nullified when its subsequent actions are inconsistent with its stated intent to abandon group bargaining." *See Herre Bros.*, 201 F. 3d at 245; and *Haas Elec*. 299 F.3d at 28.

An employer's continued membership in a multiemployer association is not necessarily inconsistent with its previously stated intent to revoke the association's bargaining rights. *Herre Bros*, 201 F.3d at 245. But an employer may be bound to a multiemployer agreement, even after effecting a timely withdrawal from an association, by continuing to participate actively in the association's negotiations and continuing to observe membership obligations . . . ." *Id*. The First Circuit agrees with this notion, but has interpreted this precedent as applying for new contracts, not an existing contract where the employer is already bound. *Haas Elec*., 299 F.3d at 30.

In *Haas Elec.*, the Court found that the employer's participation in negotiations where amendments to the existing contract and extended contracts were discussed was not inconsistent with its previous notice to withdraw from future multiemployer contracts as the employer's participation was limited to the discussions regarding the existing contract. *Id.* at 30-31. In contrast, however, the Third Circuit in *Herre Bros.* found the employer's conduct inconsistent with revocation of bargaining authority where the employer kept itself informed about the progress of the multiemployer negotiations and took advantage of the benefits of multiemployer bargaining. *Herre Bros.*, 201 F.3d at 247.

Although we agree with the district court's view that the present facts are more analogous to those in *Haas Elec.* rather than *Herre Bros.*, we do not believe that this Court has to address the issue of whether post-withdrawal negotiations serve to nullify withdrawal of new or existing contracts, because Defendants here did not participate in any post-withdrawal negotiations. In fact, Defendant Norwest did not engage in any conduct subsequent to issuance of the notice letter that could be considered inconsistent with its stated intent to withdraw. The CBA that Defendant D'Angelo signed on April 16, 2003 was the 1998-2003 agreement. Defendant did not sign a new contract.

The fact that Defendant did not actually sign the existing agreement until after the termination letter of March 28, 2003 does not serve as nullification of the stated withdrawal. Defendant signed the existing CBA only as a condition of the settlement agreement between it and the Funds, and merely fulfilled its obligations under the settlement agreement and the CBA until the agreement expired on May 31, 2003.

There is also no evidence that Defendant Norwest participated in ongoing negotiations with the Association for the new agreement. The record shows undisputed and ample evidence that Defendant Norwest clearly told Plaintiffs before the settlement agreement was executed or submitted to the Court that Norwest was only agreeing to be bound by the existing CBA. Statements and conduct of Defendant Norwest after the agreement was signed were consistent with this position.

As noted above, Defendant Norwest continually repeated their objection to being held bound by any new contract past the expiration of the 1998-2003 CBA, and insisted that its only obligation was under the 1998 agreement. Moreover, Defendant D'Angelo patently refused to sign a copy of the 2003-2008 agreement that Plaintiffs' attorney forwarded to him on June 30, 2003.

Therefore, the district court properly found that there was no conduct nullifying Defendant's March 28, 2003 notice to withdraw from the multiemployer bargaining, and Defendant did not have to notify Plaintiffs again of its intent to withdraw.

## III. CONCLUSION

For the foregoing reason, we **AFFIRM** the district court's order granting Defendants' motion for summary judgment.

11