**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0484n.06
Filed: July 11, 2006

**No. 05-1511**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| THOMAS BILJAN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| AETNA LIFE INSURANCE COMPANY, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |

Before: BATCHELDER and SUTTON, Circuit Judges; COFFMAN, District Judge.[*]

COFFMAN, District Judge. The appellant, Thomas Biljan, appeals the termination of benefits under his employer's long-term disability plan. Under the terms of this particular plan, an employee is disabled if he cannot work at an occupation paying more than 80% of his pre-disability income. Biljan argues both physical inability to work and inability to earn a salary at the 80% level. Although there is sufficient evidence that Biljan is physically able to work, it does not appear that the appellee considered the 80%-of-predisability-income requirement. Accordingly, we affirm in part, reverse in part, and remand.

I.

_____

[*] The Honorable Jennifer B. Coffman, United States District Judge for the Eastern and Western Districts of Kentucky, sitting by designation.

No. 05-1511
*Biljan v. Aetna Life Insurance Company*

The appellant, Thomas Biljan, participated in a group long-term disability plan (the "Plan")

through his employer. This Plan is governed under the Employment Retirement Income Security

Act of 1974 and is funded and administered by Aetna Life Insurance Company ("Aetna"). The Plan

defines disability as follows:

> You will be disabled while either of the following applies to you:
>
> In the first 24 months of a certified period of disability:
>
> You are not able, solely because of disease or injury, to perform the material duties of your own occupation; except, if you start work at a reasonable occupation you will no longer be deemed disabled.
>
> After the first 24 months of a certified period of disability:
>
> You are not able, solely because of disease or injury to work at any reasonable occupation.

"Reasonable occupation" is defined as "any gainful activity for which one [is] . . . fitted by

education, training, or experience" so long as it generates more than 80% of one's pre-disability

income. The Plan also requires a beneficiary to participate in a vocational rehabilitation program,

the purpose of which is to determine whether, and under what circumstances, he might re-enter the

workforce.

Prior to becoming disabled due to joint and eye disease in 1999, Biljan worked as a machine

operator, earning an annual salary of $64,412.17. Consistent with the terms of the Plan, Biljan

participated in the vocational rehabilitation program, where it was determined that he would benefit

from a college education. Therefore, beginning in the fall of 2000, Aetna paid for Biljan to return

to school to earn an undergraduate degree. The goal was for him to return to work as an industrial

production manager, a communications manager, an employee relations specialist, or a similar position. Biljan graduated from Rochester College in June 2002 with a B.S. in Business Communications and a 3.675 grade-point average. In addition to earning an undergraduate degree, Biljan has also had successful corrective eye surgery, eliminating eye disease as a cause of his disability. Pursuant to his vocational rehabilitation plan, after graduation Biljan was required to make reasonable efforts to secure employment at a reasonable occupation, as defined by the Plan. To assist him with this task, Aetna provided him with several job leads. However, despite Aetna's assistance, Biljan was unable to find work at a reasonable occupation.

Under the terms of the Plan, benefits continue if, and for only so long as, Aetna determines that a claimant is disabled. Aetna terminated Biljan's benefits in March 2003. In the termination letter, Aetna recognized that Biljan was compliant with his vocational rehabilitation program; that he had the physical ability to return to work; and that he was capable of obtaining employment at a reasonable occupation. The termination letter also referred to a labor market survey identifying several jobs that Biljan could ostensibly perform and that qualify as reasonable employment. Biljan's appeals at the administrative level and in the Eastern District of Michigan were unsuccessful. Accordingly, he filed a timely appeal in this court. At issue is whether Aetna's decision to terminate benefits was arbitrary and capricious. Specifically, the parties disagree as to the sufficiency of the medical and vocational evidence supporting Aetna's decision.

II.

The parties agree that the court should review the Plan administrator's decision under the arbitrary-and-capricious standard of review, which is the least demanding form of judicial review of an administrative decision. When applying it, the Court must decide whether the administrator's decision was rational in light of the Plan's provisions. Where a reasoned explanation for a particular outcome is possible based on the record, that outcome is not arbitrary and capricious. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000). Although review under the arbitrary-and-capricious standard is highly deferential, it does not automatically mandate adherence to the administrator's decision: "[d]eferential review is not no review, and deference need not be abject." *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003).

## III.

Aetna's decision that Biljan is able to work is supported by evidence in the record. Biljan's ophthalmologist, his optometrist, and his family doctor have unequivocally opined that he is able to work. Additionally, Aetna referred Biljan's file to an independent medical consultant, Dr. Hopkins, who confirmed that Biljan could return to work. Biljan complains that Dr. Hopkins did not review his actual medical records, but instead relied on electronic notes of conversations with Biljan's doctors. Aetna's decision to rely, in part, on Dr. Hopkins's opinion was not arbitrary or capricious, as Dr. Hopkins's opinion merely echoes that of Biljan's own doctors.

## IV.

If physical ability to work were the sole calculus of disability, we could terminate our inquiry at this point. However, under the terms of this particular Plan and as conceded by Aetna's counsel, disability turns not only on a claimant's ability to work, but also on his ability to work at a reasonable occupation, defined as one that pays more than 80% of his pre-disability income. To work at a reasonable occupation, one must be fitted by "training, education, or experience." Accordingly, when a Plan administrator determines whether a claimant is able to work at a reasonable occupation, he must consider not only the claimant's education, but also his training and his experience.

Aetna argues that it was entitled to terminate Biljan's benefits because it paid for his education so that he could secure employment at a reasonable occupation and because it identified several jobs that he could perform as a result of his newly minted degree. We can find no evidence, however, that Aetna considered Biljan's experience or his training in determining that he could work at a reasonable occupation. Although Aetna's termination letter refers to a labor market survey, this evidence is absent from the record. Nor does the record contain other documentation to show how Aetna determined that Biljan was qualified to work at certain jobs. Instead, the record suggests that most of the proposed occupations require years of experience that Biljan – who is moving from hard labor to administration – appears to lack.[1]

---

[1] The record contains information about eighteen job leads that Aetna provided to Biljan. Of these eighteen leads, seventeen required experience. Two leads required "experience" without quantification. Three other leads required 2 to 4 years of experience. The remaining twelve leads required 5 or more years of experience. (Joint Appendix at 298-320). The record reflects as well that Aetna telephoned some of these potential employers, but that Biljan failed to pursue those leads.

Aetna fears that requiring it to show that a claimant cannot work at a reasonable occupation will turn it into an employment service. This fear is misplaced. Nothing requires Aetna actually to provide the claimant with a job. However, before Aetna may terminate benefits under the terms of this Plan, it must consider whether the claimant is fit to work at a reasonable occupation after considering all relevant factors. In this case, those factors include not only the claimant's education, but his training and his experience. Accordingly, we find that Aetna acted arbitrarily and capriciously in terminating Biljan's benefits.

V.

For these reasons, we AFFIRM IN PART and REVERSE IN PART the district court's order affirming the termination of benefits, and we direct the district court to REMAND this matter to Aetna for further proceedings consistent with this opinion.

---

The record does not reflect, however, that Aetna's calls would have made any difference with regard to the various employers' experience requirements.