*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0067p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

WALTER LAWRENCE GODLESKI,

　　　　　　　*Plaintiff-Appellant,*

　　　*v.*

FIRSTENERGY CORP., et al.,

　　　　　　　*Defendants-Appellees.*

No. 06-3448

>

---

Appeal from the United States District Court
for the Northern District of Ohio.
No. 04-02403—James Gwin, District Judge.

Argued: January 31, 2007

Decided and Filed: February 20, 2007

Before: GILMAN and SUTTON, Circuit Judges; TARNOW, District Judge.[*]

---

## COUNSEL

**ARGUED:** Martin S. Hume, Youngstown, Ohio, for Appellant. Paul L. Jackson, ROETZEL & ANDRESS, Akron, Ohio, for Appellees. **ON BRIEF:** Martin S. Hume, Youngstown, Ohio, for Appellant. Paul L. Jackson, Karen D. Adinolfi, ROETZEL & ANDRESS, Akron, Ohio, for Appellees.

---

## OPINION

---

　　　SUTTON, Circuit Judge. After FirstEnergy eliminated Lawrence Godleski's position with the company, it denied his claim for severance benefits under the company's benefits plan. Godleski filed a lawsuit to recover the benefits under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and the district court entered judgment on the administrative record in favor of FirstEnergy. Concluding that FirstEnergy arbitrarily and capriciously denied Godleski benefits, we reverse.

---

[*] The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

I.

Godleski worked for FirstEnergy Solutions ("Solutions"), a subsidiary of FirstEnergy Corp. ("FirstEnergy"), from 1997 through early 2004. As an employee, he participated in the FirstEnergy Severance Benefits Plan, which provides severance pay and other benefits to eligible employees upon the termination of their employment.

On January 28, 2004, Solutions sent Godleski a letter notifying him that his position would be eliminated. The letter also indicated (1) that his employment would be terminated if he did not obtain another position with the company by February 27 and (2) that he would be eligible for severance benefits if he did not find another position with the company.

On February 24, as part of his exit interview, Godleski received a form stating that he was "eligible to receive a one-time lump sum payment of $18,226.37 in severance pay" under the benefits plan. JA 93. As a condition for receiving the payment, the company required him to sign an agreement that would "release . . . the Company . . . from any and all claims . . . [he] may now have or claim to have against the Company." JA 102–03. The company directed Godleski to return the signed release to Steve Mileski, the manager of the severance plan, by April 12.

As Godleski was navigating this severance process he obtained a new job. Roth Brothers, Inc., a subsidiary of FirstEnergy, offered him a position on February 24. He accepted on February 27, and he began working for the subsidiary on March 1.

On April 8, Godleski attempted to submit the release agreement to Mileski, who refused to accept the release, claiming that Godleski's employment with Roth Brothers made him ineligible for severance benefits. Mileski also informed Godleski that he could seek review of the decision from the company's Appeals Committee.

On May 12, Godleski sent a letter to Richard LaFleur, the chairman of the Appeals Committee, asking him to "[a]ccept this letter as my petition to the Appeals Committee for a formal review of my eligibility for severance in accordance with the plan." JA 86. He also asked LaFleur to provide him with "an outline of the appeals process as well as the information required to formally commence the appeal." *Id*.

On June 10, the Appeals Committee denied Godleski's appeal. "The reason that benefits are denied," the letter explained, "is that in order to be eligible to receive benefits you must complete an Agreement to Release in Full. One of the provisions of the Release is an agreement that you will not seek employment with the Company, its parents, subsidiaries, divisions, or affiliates. Since you accepted employment with Roth Bros. you do not qualify for benefits." JA 90.

Godleski responded by filing a complaint in federal court, claiming that the company violated ERISA by failing to provide him with severance benefits. *See* 29 U.S.C. § 1132. At some point after filing the complaint, Godleski asked the district court for permission to file a second administrative appeal with FirstEnergy. In accordance with the district court's order permitting the filing, Godleski submitted a letter to the company seeking severance benefits and attached the release and exit interview form, both signed *nunc pro tunc* April 8, 2004.

FirstEnergy denied Godleski's renewed application for benefits. The Severance Benefits Committee cited Godleski's failure to "return the signed and witnessed Agreement to Release in Full" by April 12, 2004 and reasoned that, even had he returned the agreement, he did not meet its provisions because he "accepted employment with Roth Bros." JA 134. The letter informed Godleski that he had 60 days to file an appeal with the Appeals Committee.

Godleski appealed, and the Appeals Committee denied relief. The committee explained that it had denied Godleski's claim because he "did not execute the Release" in time and because "[t]he terms set forth in the Release are . . . conditions precedent" that "[y]ou did not meet." JA 106–07.

The parties returned to district court, where each of them filed a motion for judgment on the administrative record. The district court granted FirstEnergy's motion and denied Godleski's. The court held that Godleski's employment at Roth Brothers did not defeat his eligibility for severance benefits, but nevertheless granted FirstEnergy's motion because "plaintiff waived his right to severance benefits by not submitting a signed Release within the deadlines set by the Plan documents." D. Ct. Op. at 9–10.

## II.

In the ERISA setting, we give fresh review to the district court's ruling on the administrative record and apply the same arbitrary-and-capricious standard that the district court applied in reviewing the plan administrator's decision. *See Evans v. Unumprovident Corp.*, 434 F.3d 866, 875 (6th Cir. 2006). FirstEnergy defends its decision to deny Godleski benefits solely on the ground that he failed to submit a signed release agreement in a timely manner; it thus does not raise Godleski's employment with Roth Brothers as an alternative ground for affirmance. Because this single ground raised on appeal for affirming the district court's decision—Godleski's failure to sign a release agreement by April 12—does not supply an adequate "reasoned explanation" for FirstEnergy's decision, we reverse. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000) (internal quotation marks omitted).

The problem with the administrator's ruling is that it fails to account for the fact that the plan provides two alternative methods for obtaining severance benefits: either by obtaining them automatically or by filing a claim for them. By its terms, the plan says that "benefits will be offered automatically for those who qualify under [its] provisions" so that it is "not necessary . . . to submit a claim unless you believe you qualify and have not been notified that you will be offered severance benefits." JA 80. While it is clear that Godleski had to sign a release by a certain date in order to receive benefits automatically offered, there is no similar timing requirement with respect to benefits sought by filing a claim.

Start with the plan provision entitled "Severance Benefits Will Be Contingent Upon Release Agreement." JA 77. It does not require a claimant to submit a release agreement as part of a claim but rather addresses those to whom the company has offered benefits. The release agreement provision begins by saying, "Upon your involuntary separation from employment for the reasons described above, you *will* be offered the severance benefits outlined below." JA 77 (emphasis added). "Your receipt of severance pay [and receipt of other benefits]," it continues, "are all contingent upon your signing an agreement releasing the Company from any and all legal claims as a result of your separation from employment. The release agreement will be provided to you *with the offer of severance benefits*." JA 77 (emphasis added). As these provisions make clear, a signed release agreement is a prerequisite to receiving benefits the company has already determined to be appropriate. The point is cemented by the next clause: "You will have at least 21 days to consider whether to accept the severance benefits offered and sign the release." *Id.* Signing the release thus signals the participant's acceptance of benefits offered by the company, not his application for those withheld.

Consistent with these provisions, the company notified Godleski that he was eligible for the automatic payment of severance benefits in his February 24 exit interview. JA 93 ("Under the Company's Severance Benefits Plan, you are eligible to receive a one-time lump sum payment of $18,226.37 in severance pay."). The company gave him until April 12 to accept the offer. On April

8, however, Mileski effectively rescinded the company's payment offer by refusing to accept the release agreement due to Godleski's employment with Roth Brothers and Mileski's understanding that this employment made Godleski ineligible for severance benefits. At the same time, Mileski effectively denied Godleski's claim for benefits and explained that he could appeal that decision. JA 24 (Mileski recalling that he "had the authority to approve or disapprove the payment of benefits to a particular employee" and that he "disapprove[d] the payment of benefits" to Godleski because Godleski "did not pass the eligibility [requirements] as he was employed by FirstEnergy Corp"); *id.* (Mileski further recalling that he "explain[ed] to [Godleski] that there was an appeal process . . . and referred him to Mr. LaFleur"); *see also* JA 86 ("Mr. Mileski stated that I [Godleski] ha[d] the right to request a formal review of my eligibility by the Appeals Committee.").

All of this put Godleski in the position of a participant denied benefits under the plan. And neither the administrator nor the district court has explained what requirements for filing a claim he has failed to meet. The plan provides that participants "shall have 60 days . . . from the date of the initial benefit determination to file an appeal," which "must be mailed to the" Appeals Committee. JA 81. On May 12—34 days after speaking with Mileski—Godleski mailed LaFleur a letter as his "petition to the Appeals Committee for a formal review of my eligibility for severance in accordance with the plan." JA 86. The Committee treated the letter as such and issued its denial on June 10. In contrast to benefits received automatically, an application for benefits makes no mention of a release, much less requires the release to be signed in connection with the *request* for benefits. A claim is defined as "a request for a Plan benefit"; claims "must be in writing, signed by the participant . . . and submitted on the appropriate form and in a manner acceptable to the Plan Administrator." JA 90. Conspicuously absent from the "Claims Process" provision of the plan is any mention of a release agreement that must be submitted with a claim for benefits.

FirstEnergy stakes its position on the fact that signing the release agreement was a "condition precedent" to receiving benefits under the plan. But, as shown, the plan required participants to sign release agreements only after benefits had been offered by the company. The plan says nothing about release agreements in connection with rescinded offers; it instead provides an independent claims process for those who believe they qualify but are not offered benefits.

That of course makes perfect sense. Why ask an employee to sign a release of all claims against his employer before the company determines that he is eligible for benefits? And why would an employee sign the release on the off chance that the company may offer benefits at some point in the future? This unusual requirement is not consistent with the terms of the plan. And, for that matter, it is not even consistent with the terms of the release agreement itself. *See* JA 124 (Employee signing the release agreement must acknowledge that "I have been offered certain benefits under the Plan."); *id.* (Company and employee agree that "[i]n consideration of [employee's] acceptance of this Agreement . . . [employee] shall receive . . . severance pay."). Under these circumstances, we see no plausible reason for reading any such requirement into the plan.

III.

For these reasons, we reverse and remand with instructions to enter judgment in favor of Godleski, to calculate his severance benefits and to determine whether to award interest and any appropriate attorney's fees.