NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0327n.06
Filed: May 9, 2006

No. 05-1399

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| PHILIP B. ZIEGLER, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellant*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| HRB MANAGEMENT, INCORPORATED | ) | **O P I N I O N** |
| | ) | |
| *Defendant-Appellee*. | ) | |

BEFORE:   KENNEDY, COLE, and McKEAGUE, Circuit Judges.

**R. GUY COLE, JR., Circuit Judge.**   Plaintiff-Appellant Philip Ziegler filed suit against Defendant-Appellee HRB Management, Inc. ("HRB") pursuant to ERISA, 29 U.S.C. § 1001, *et seq.*, following HRB's denial of his claim for benefits. The district court granted summary judgment in favor of HRB. Ziegler appeals the district court's judgment denying his claim. For the reasons that follow, we **AFFIRM** the judgment of the district court.

**I.**

Ziegler was an employee of H&R Block Financial Advisors, Inc. and was covered by the H&R Block Severance Plan ("Plan"). The Plan provided "severance compensation and benefits to certain employees . . . whose employment is involuntarily terminated" for specified reasons. Under the terms of the Plan, Ziegler incurred a "Qualifying Termination" on May 18, 2001, when he was

terminated because of his employer's efforts to reduce its workforce. Under the Plan, Ziegler

became a "Participant," thereby eligible to receive benefits.

On June 30, 2000, prior to his termination, Ziegler had received a stock option. The option,

issued under H&R Block's 1993 Long-Term Executive Compensation Plan, allowed Ziegler to

purchase 500 shares of H&R Block's Common Stock at $32.375 per share. This option vested in

thirds if certain conditions were met. These conditions were:

> First 1/3 of shares subject to the option vests on the earlier of: Third anniversary of date of grant or the day after the 30th consecutive trading day with a closing market price of at least $40.

> Second 1/3 of shares vests on the earlier of: Fourth anniversary of date of grant or the day after the 30th consecutive trading day with a closing market price of at least $50.

> Third 1/3 of shares vests on the earlier of: Fifth anniversary of date of grant or the day after the 30th consecutive trading day with a closing market price of at least $60.

Ziegler exercised the first one-third of the option and then later the second one-third. HRB contends

that the second option never vested and that Ziegler was allowed to exercise it due to a clerical error.

HRB insists that, for reasons of fairness, it has not pursued a refund of this erroneously exercised

option.

By the middle of July 2001, after Ziegler's termination, the value of H&R Block stock had

stayed above the requisite level for the requisite amount of time such that the final one-third of

Ziegler's option should vest. When Ziegler attempted to exercise this portion of his option, he was

informed that it had not vested and, therefore, he was ineligible to exercise it. HRB based its

determination on paragraph 6(a) of the Plan, which states:

> [A]ll outstanding incentive stock options and nonqualified stock options granted to the Participant under the Company's 1993 Long-Term Executive Compensation Plan not less than 6 months prior to his or her Termination Date that would have vested during the 18-month period following such Termination Date had the Participant remained an employee with the Participating Employer during that period will immediately vest as of the later of the Termination Date or Release Date.

Ziegler contends that this paragraph requires that HRB wait and see if his option would have vested, and then retroactively find that it immediately vested. HRB contends that this paragraph only provides for the vesting of stock options at the time of termination if it is known to HRB at that point whether the option would in fact vest within the 18-month period and does not require a wait-and-see approach.

After pursuing all remedies provided for in the Plan, Ziegler filed this lawsuit in the district court. The district court granted HRB's motion for summary judgment, holding that HRB's determination that the final one-third of Ziegler's option did not vest was not arbitrary and capricious. Ziegler filed a timely appeal.

**II.**

We review a district court's judgment on the administrative record in an ERISA appeal *de novo*, but apply the same legal standard that the district court applied. *Whitaker v. Hartford Life & Accident Ins. Co.*, 404 F.3d 947, 949 (6th Cir. 2005) (citing *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 613 (6th Cir. 1998)). The plan administrator's determination to deny benefits is reviewed under an "arbitrary and capricious" standard if the ".benefit plan gives the administrator . . . authority to . . . construe the terms of the plan.'" *Whitaker*, 404 F.3d at 947 (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).

When reviewing an ERISA administrative decision, our review is limited to the evidence that the plan administrator examined in making his or her determination. *McCartha v. Nat'l City Corp.*, 419 F.3d 437, 441 (6th Cir. 2005) (citing *Wilkins*, 150 F.3d at 617–20); *see also Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 660 (6th Cir. 2004). "If the administrative record. . . can support a 'reasoned explanation' for [the plan administrator's] decision, the decision is not arbitrary [and] capricious." *Moon v. Unum Provident Corp.*, 405 F.3d 373, 379 (6th Cir. 2005). Stated otherwise, the administrator's decision must be affirmed if "'it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'" *Whitaker*, 404 F.3d at 949 (quoting *Baker v. United Mine Workers of Am. Health and Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)). Under the arbitrary and capricious standard, we will affirm a denial of benefits if it is "rational in light of the plan's provisions." *Williams v. Int'l Paper*, 227 F.3d 706, 712 (6th Cir. 2000) (quotation omitted); *see also id.* ("when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not" arbitrary and capricious (quotation omitted)).

**III.**

The district court analyzed the administrative record and correctly concluded that HRB did not act arbitrarily and capriciously in denying Ziegler the right to exercise the third portion of the stock option. In short, Ziegler argues that the plan administrator did not properly interpret the word "all" in paragraph 6(a) of the Plan. Ziegler believes that, if this Court interprets the Plan according to the "plain meaning, in an ordinary and popular sense," *Univ. Hosp. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 849 (6th Cir. 2000) (quotation omitted), this Court must come to the conclusion that HRB's denial of benefits was arbitrary and capricious. Ziegler argues that HRB's interpretation

inserts conditions that were not set forth in the Plan, in violation of this circuit's precedent. *See*, *e.g.*, *id*. at 850–51. Ziegler's contentions are without merit.

HRB interpreted the Plan according to its plain meaning — that Ziegler was not entitled to exercise the final one-third of his stock option because the option did not vest. Again, the Plan states that:

> [A]ll outstanding incentive stock options and nonqualified stock options granted to the Participant under the Company's 1993 Long-Term Executive Compensation Plan not less than 6 months prior to his or her Termination Date that would have vested during the 18-month period following such Termination Date had the Participant remained an employee with the Participating Employer during that period will immediately vest as of the later of the Termination Date or Release Date.

Ziegler contends that "all" must be interpreted to include any stock option that might have vested within the 18-month period following his termination. However, Ziegler's proposed interpretation is not tenable. "All" modifies "would have vested during the 18-month period." "Would" is a word that is "[o]ften interchangeable with the word 'should,' but not with 'could.'" Black's Law Dictionary 1607 (6th ed. 1990). In other words, "would" indicates that, looking forward, the event definitely happens rather than indicating it might happen. Further, the Plan specifically states that these options "will *immediately* vest" (emphasis added). The only way to read this section of the Plan cohesively is the way HRB interpreted it: looking forward at the time of termination, only those stock options that definitively would vest within an 18-month period had the employee remained an H&R Block employee, vested immediately. Options that were based on a contingency, like Ziegler's option, did not vest.

The Plan did not provide that options "might vest," "did in fact vest," or "could vest" within the stated time period vested. The Plan provided that options that "would" vest — i.e., options guaranteed to vest if the employee remained with his employer — vested immediately at the time of termination. Further, to read "immediately vest" as requiring a wait-and-see approach is nonsensical. If HRB had to wait to determine if the stock option would in fact vest, then it would have to read "immediately vest" out of the Plan because the option could not immediately vest upon termination. The "plain meaning" interpretation of the word "all" offered by Ziegler conflicts directly with the obvious and plain meaning of "immediately."

Ziegler argues that the rule of *contra proferentum* requires that we construe the Plan in his favor. *See Univ. Hosp. of Cleveland*, 202 F.3d at 846–47 ("[T]o the extent that the Plan's language is susceptible of more than one interpretation, we will apply the 'rule of *contra proferentum*' and construe any ambiguities against Defendants/Appellees as the drafting parties." (citing *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 557 n.7 (6th Cir. 1998)). Where there is no ambiguity in the Plan language, however, the rule of *contra proferentum* is inapplicable. *See Perez*, 150 F.3d at 557 n.7 ("The rule of *contra proferentum*, however, only applies to *ambiguous* contract provisions. . . . Ambiguity requires two reasonable interpretations. . . . Furthermore, mere disagreement between the parties does not create ambiguity in the legal sense." (citations omitted)). Because there is only one reasonable interpretation of the Plan language, Ziegler's *contra proferentum* argument is meritless.

Finally, Ziegler argues that, because HRB is a subsidiary of H&R Block, there is a conflict of interest requiring reversal of HRB's interpretation of the Plan. Because there is no evidence that

the conflict of interest motivated HRB's denial of benefits, the evidence of a conflict of interest does not require a determination, especially in light of the fact that HRB interpreted the Plan properly according to the plain meaning of the plan, that HRB acted arbitrarily and capriciously in denying Ziegler benefits.

In sum, HRB's interpretation was not arbitrary and capricious. HRB's determination was rational and well-reasoned in light of the plain meaning of the Plan. Therefore, the district court's grant of summary judgment to HRB is affirmed.

**IV.**

For the foregoing reasons, we **AFFIRM** the judgment of the district court.