NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0640n.06
Filed: July 29, 2005
File Name: 05a0640n.06
Filed: July 29, 2005

No. 04-5621

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

DAVID STORMS,

     Plaintiff-Appellant,

                                      On Appeal from the United States District
v.                                   Court for the Eastern District of Tennessee

AETNA LIFE INS. CO.,                      **OPINION**

     Defendant-Appellee.

_____/

**Before: BATCHELDER and COLE, Circuit Judges; and REEVES, District Judge.**[*]

     **DANNY C. REEVES, District Judge.** Plaintiff-Appellant David Storms filed this action seeking long-term disability benefits under the Employee Retirement Income Security Act ("ERISA"), claiming that narcolepsy prevents him from performing his pervious job as a Center Administrator for Concentra Managed Care, Inc. ("Concentra"). He now appeals the district court's entry of judgment in favor of Defendant-Appellee Aetna Life Insurance Company's ("Aetna"). For the reasons that follow, we **AFFIRM** the district court's judgment.

_____

[*] The Honorable Danny C. Reeves, United States District Court Judge for the Eastern District of Kentucky, sitting by designation.

-1-

## BACKGROUND

Storms was hired as Center Administrator for Concentra in March 1999. He was responsible for implementing and coordinating several of Concentra's managed care treatment programs. In July 1999, Storms advised his family physician that he suspected he suffered from a sleep disorder. Storms was referred to neurologists and underwent a sleep study. The doctors concluded that he suffered from narcolepsy, a conclusion Aetna does not dispute. Storms was treated with various medications with varying success. On August 12, 2001, Storms left his job and sought long-term disability benefits through his employer's ERISA long-term benefits plan ("Plan"), established pursuant to 29 U.S.C. § 1001, *et seq*., and administered by Aetna.

After reviewing the relevant medical records and submitting them to an Aetna medical consultant, Dr. Brent Burton, Aetna concluded that Storms was not disabled. In order to qualify for benefits, the Plan specified that the claimant must be unable "solely because of injury or disease, to perform the material duties of your own occupation." And while agreeing that Storms suffered from narcolepsy, Aetna concluded that Storms was still capable of performing his job duties. It noted that commuting to work was not part of his job duties and further that he was considered "not disabled" as long as he could perform his job duties for any employer at another location.

Storms appealed this determination administratively. Aetna's Medical Director, Dr. Oyebode Taiwo, reviewed the record and affirmed the earlier conclusion that Storms was not precluded from performing his job responsibilities. On October 8, 2002, Storms filed suit in the

Circuit Court for Knox County, Tennessee, seeking to compel Aetna to provide long-term benefits. Aetna removed the action to the United States District Court for the Eastern District of Tennessee. The parties filed cross-motions for judgment. The district court granted Aetna's motion, concluding that Aetna's decision was neither arbitrary nor capricious.

## STANDARD OF REVIEW

In ERISA cases, "[t]his court reviews de novo the district court's ruling, applying the same legal standards as the district court." *Whitaker v. Hartford Life & Accident Ins. Co.*, 404 F.3d 947, 949 (6th Cir. 2005). When, as here, plan administrators are vested with discretionary authority to determine eligibility for benefits and to construe the terms of the Plan, the court applies an "arbitrary and capricious" standard of review. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 110-11 (1989); *Whitaker*, 404 F.3d at 949. "This standard is the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Killian v. Healthsource Provident Administrators, Inc.*, 152 F.3d 514, 520 (6th Cir. 1998) (quotation omitted).

Storms argues that Aetna operates under an inherent conflict of interest because Aetna funds and administers the Plan. In such circumstances, the Court factors the "insurer's dual role into its review under the arbitrary and capricious standard, rather than alter that standard." *Whitaker*, 404 F.3d at 949 (citation omitted).

## **DISCUSSION**

Storms makes two claims of error: (1) Aetna erred in finding that he had the ability to perform "the material duties" of his occupation and (2) the district court erred in failing to consider evidence outside the administrative record.

A.      *Material Duties of the Occupation*

Storms notes that multiple physicians diagnosed him with narcolepsy. As noted above, Aetna does not dispute that diagnosis. Rather, it contends that Storms failed to demonstrate that he is unable to perform the material duties of his occupation. In denying Storms' application for benefits, Aetna concluded that he was not prohibited from performing the material duties of his occupation, even if he was unable to safely drive to work.

While Storms points out some instances in the record referencing his difficulty at work due to sleep problems, those references are based entirely upon Storms' subjective, self-serving statements. Dr. Radoff noted that Storms "is a very industrious person" who "is trying to set up a work program at home . . . ." Several instances in the record discuss Storms' inability to safely drive; however, virtually nothing in the record supports a conclusion that Storms was unable to perform the duties of his work, with the exception of one evaluation.

Storms cites an evaluation by Dr. David Calvert, his personal physician, responding to a questionnaire from Aetna. Dr. Calvert indicated that Storms had a "Class 5" work limitation, meaning he had a "severe limitation of functional capacity; incapable of minimal (sedentary) activity." In dismissing this assessment, Aetna wrote that "the opinion expressed by Dr. Calvert

is not supported by any medical data or by the opinions of the neurologists who previously

evaluated" Storms. The record reveals that Dr. Calvert's conclusory finding was not supported

by objective medical data, useful analysis, or the other opinions in the record. Such reasons are

sufficient to discount the opinion of a treating physician. *See Wilson v. Comm'r of Soc. Sec.*, 378

F.3d 541, 546 (6th Cir. 2004) (discussing treating physician rule in the context of a Social

Security claim). In addition, in ERISA actions, treating physicians are not accorded special

deference. *The Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003). Here, Dr.

Calvert's conclusion was not supported by the record. Dr. Calvert, in fact, referred Storms to

neurologists to get expert opinions regarding his condition. None of these experts concluded that

Storms was unable to perform his job duties. Treating physician Dr. Sibyl Wray noted that

Storms "doesn't nap during the day but his work keeps him constantly moving. . . . He feels he

can concentrate well at work despite this problem." Both Dr. Calvert and Dr. Radoff noted that

Storms was attempting to establish a home business. In addition, no other doctor offered

objective, medical evidence suggesting that Storms would be unable to perform the essential

functions of his job. Finally, Storms worked successfully for several years despite suffering

from narcolepsy.

Two courts, including one within this circuit, have held that the inability to drive to work

does not typically constitute a material and substantial job responsibility. *Adams v. Prudential*

*Ins. Co. of Am.*, 280 F. Supp. 2d 731, 740 (N.D. Ohio 2003); *Chandler v. Underwriters Labs,*

*Inc.*, 850 F. Supp. 728, 738 (N.D. Ill. 1994). Further, Storms' job description does not reference

driving or commuting as part of his job responsibilities. As noted by Aetna, Storms could have car pooled to work, gotten a ride from a spouse, or moved closer to work. Instead, however, Storms chose to live in a town approximately one hour away from his job site at Concentra.

Ultimately, Storms must bear the responsibility for choosing to live so far from work. "A person, otherwise able to work, is in effect offered a choice: he can choose either to commute the distance to his job or he can move closer and avoid the expense and inconvenience." *Harmon v. Apfel,* 168 F.3d 289, 292 (6th Cir. 1999) (quoting *Lopez Diaz v. Sec'y of Health, Educ. and Welfare,* 585 F.2d 1137, 1140 (1st Cir. 1978). There may be many valid reasons for Storms' decision to live so far from work, but that decision does not render him disabled, under the terms of the Plan, simply because he cannot drive himself to work. Thus, even considering Aetna's "dual role" in administering and funding the Plan, Aetna's decision was neither arbitrary nor capricious.

B.     *Evidence Outside the Administrative Transcript*

Storms argues that the district court should have ordered an independent medical examination ("IME") and should have allowed him to supplement the record with documents demonstrating that he was awarded Social Security benefits, after the closure of the administrative record. The district court, however, may only consider evidence outside of the administrative record when considering claims of lack of due process or bias. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998).

Storms claims that the failure to order an IME evinces Aetna's bias, given the findings of Storms' own physicians. As noted *supra*, however, Aetna does not take issue with the finding that Storms suffers from narcolepsy, or recommendations that he not drive. Instead, it maintains that the evidence submitted by Storms did not support his claim that he could not perform the essential duties of his job. Only Dr. Calvert made findings suggesting that Storms might be unable to perform his job duties. As previously noted, however, that finding was not articulated and was not supported by the objective, medical evidence in the record. Aetna had good cause for finding that Dr. Calvert's simple check-mark on a form, unaccompanied by reasonable explanation or medical evidence, does not constitute sufficient evidence that Storms is unable to perform the essential duties of his job. The district court was not required to order an IME and an IME would not have provided any evidence of Aetna's alleged bias. Indeed, there is no evidence in the record establishing bias or bad faith on the part of Aetna.

Regarding Storms' argument regarding his award of Social Security benefits, "an ERISA plan administrator is not bound by an SSA disability determination when reviewing a claim for benefits under an ERISA plan." *Whitaker*, 404 F.3d at 949. Further, such evidence does not fall under the exception to the rule that federal courts can only consider evidence properly presented to the plan administrator when reviewing the reasonableness of an ERISA determination.

**CONCLUSION**

We **AFFIRM** the judgment of the district court.