**Walter SMITH, Plaintiff,**

v.

**FEDERAL EXPRESS CORPORATION LONG TERM DISABILITY PLAN, et al., Defendants.**

**Case No. 11–02691.**

United States District Court, W.D. Tennessee, Western Division.

Jan. 13, 2014.

Eugene A. Laurenzi, Lesley J. Cook, Godwin Morris Laurenzi & Bloomfield, P.C., Memphis, TN, for Plaintiff.

Colby S. Morgan, Jr., FedEx Corporation, Legal Department, Memphis, TN, for Defendants.

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [21] AND DENYING PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT [22]

ARTHUR J. TARNOW, Senior District Judge.

## I. Introduction

Before the Court is Defendants' Motion for Summary Judgment [21], and Plaintiff's Cross–Motion for Summary Judgment [22]. Plaintiff's Complaint [1] seeks action under the Employee Retirement Income Security Act ("ERISA") to recover full benefits and a remedy for breach of fiduciary duty. Defendants' Motion for Summary Judgment [21] claims Defendant Aetna Life Insurance Company ("Aetna") has been misjoined and should be dismissed, and that denial of Federal Express Corporation Long Term Disability Plan ("LTD Plan") benefits was not arbitrary and capricious. Plaintiff's Cross–Motion for Summary Judgment [22] claims that the LTD Plan's denial of Plaintiff's benefits was arbitrary and capricious.

For the reasons stated below, Defendants' Motion for Summary Judgment [21] is **GRANTED**, and Plaintiff's Cross–Motion for Summary Judgment [22] is **DENIED**.

## II. Background

Plaintiff Smith worked for Defendant Federal Express Corporation ("FedEx") from 1985 until May 28, 2007. Plaintiff received short-term disability benefits ("STD Plan") through FedEx's insurance plan provider Aetna from May 28, 2007 until November 26, 2007, at which time his LTD Plan coverage began. Plaintiff remained on the LTD Plan for two years, receiving 60% of a Covered Employee's monthly income. Plaintiff was denied further benefits through the LTD Plan because the plan adjusts the definition of "disability" after the first two years of coverage. In order to continue receiving LTD Plan benefits after two years, the plan's requisite level of disability is no longer Occupational Disability, defined as an inability to "perform duties of regular occupation," but rather Total Disability, defined as an inability to "engage in any compensable employment for twenty-five hours per week."

The parties agree that Plaintiff has suffered from numerous medical problems, most notably Class III heart disease, as diagnosed by Plaintiff's cardiologist Dr. Stevin Gubin in September 2008. The parties also agree that Plaintiff's New York Heart Association ("NYHA") Class III cardiac status limits his physical activity, as evidenced by Plaintiff self-reporting a "shortness of breath" after cleaning his father-in-law's gutters in a May 18, 2009 physician's note. However, in a series of reports and statements made between October 2007 and April 2010, Plaintiff's personal physicians and Aetna-retained physicians have disagreed regarding whether Plaintiff is able to engage in sedentary employment.

In October 2007, Dr. Gubin reported that Plaintiff was unable to "tolerate any type of work." However, in a September 22, 2008 physical examination, Dr. Gubin concluded that Plaintiff was able to sit for five hours, stand or walk for three hours in an eight-hour work day, and use his hands for a "repetitive motion such as writing or

typing." Further, Plaintiff showed ability to use his feet for "repetitive movements as in operating foot controls" and could frequently lift up to ten pounds, and occasionally lift up to twenty pounds.

The Social Security Administration ("SSA") granted Plaintiff Social Security disability on October 23, 2008, finding that Plaintiff had been unable to perform sedentary work since May 10, 2007.

A later examination by Dr. Gubin on August 31, 2009 described Plaintiff as "appearing hemodynamically stable," meaning that although his heart condition was chronic, it was stable and not anticipated to worsen. In anticipation of Plaintiff's LTD Plan coverage expiring, Plaintiff was also seen by his endocrinologist Dr. Harold Sacks on July 31, 2009. A report from this examination concluded that because of Plaintiff's widely varying levels of blood glucose and lipid readings, he was unable to perform twenty-five hours of weekly sedentary employment. However, as clarified by Dr. Sacks in the same report, and corroborated by Dr. Burton Hayes in a January 12, 2010 report, Plaintiff's variations were the result of his correctable non-compliance with diabetes treatment. Specifically, Dr. Hayes called Plaintiff a "ticking time bomb" in describing the possibility of recurrence of cardiovascular events as a result of Plaintiff's continued non-compliance with prescription medications, dietary and exercise recommendations, as well as continued use of tobacco and consumption of alcohol.

As Plaintiff neared the LTD Plan two-year benchmark in November 2009, examination of his medical records by LTD Plan Nurse Consultant Marilyn Hipple, RN and Aetna-retained physician Dr. Stephen Waggoner, confirmed by letter on August 31, 2009, determined that Plaintiff was able to work at any compensable employment for a minimum of twenty-five hours a week. Further examination of Plaintiff's records by Aetna-retained cardiologist Dr. Ira Feldman on October 16, 2009 concurred with Dr. Waggoner's recommendation in concluding that Plaintiff's impairments were insufficient to prevent Plaintiff from performing the minimum employment to satisfy Total Disability.

These recommendations were based in part on a June 19, 2009 stress test performed at the Stern Cardiovascular Center that revealed Plaintiff had an increased, yet still low ejection fraction rate,[1] and no definitive sign of ischemia,[2] contradicting Dr. Gubin's records. Aetna's Administrative Record shows the test results demonstrated Plaintiff's stability from a "cardiac perspective," requiring no further treatment. The record indicated that Plaintiff's heart conditions were stable, that his hypertension, high cholesterol, and blood sugar levels were controlled by medication, and that more than five years of physical examinations had yet to reveal chest pain.

An additional review of Plaintiff's records by Aetna-retained cardiologist Dr. Leonard Pianko concurred with the recommendations of Dr. Waggoner and Dr. Feldman, noting that although Plaintiff's heart function was unhealthy, he was "stable from a cardiac perspective," as expressed in the Aetna Administrative Record. Further, Dr. Pianko expressed that although Plaintiff's heart function was not perfect, as had become generally accepted based on Plaintiff's low ejection fraction rate and chronic problems from a prior heart attack, his overall heart health had improved. As a result, Dr. Pianko also determined that in his opinion Plaintiff was

---

1. A measure of how well the heart is pumping.

2. Deterioration of heart muscle through restricted blood supply.

able to work at any compensable employment for a minimum of twenty-five hours a week.

In total, five physicians evaluated Plaintiff's health and provided an opinion as to his Total Disability status. Three of the five physicians, including the entirety of the Aetna-retained team, concluded that Plaintiff could perform the requisite twenty-five hours of sedentary employment weekly. Although Dr. Gubin stated as recently as April 2010 that "any type of stress at work would be extremely detrimental to [Plaintiff's] health," the same statement also noted that Plaintiff was only limited in his ability to perform strenuous or stressful work.

### III. Standard of Review

■ Under ERISA, when a plan administrator, such as Defendant Aetna in this case, has the discretionary authority to determine eligibility for benefits, courts review a decision to deny benefits under "the highly deferential arbitrary and capricious standard of review." *McDonald v. Western–Southern Life Ins. Co.*, 347 F.3d 161, 168–69 (6th Cir.2003) (citing *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir.1996)).

> [T]he arbitrary and capricious standard is the least demanding form of judicial review of administrative action. When applying the arbitrary and capricious standard, the Court must decide whether the plan administrator's decision was rational in light of the plan's provisions. Stated differently, when it is possible to offer a reasoned explanation, based on evidence, for a particular outcome, the outcome is not arbitrary or capricious.

*Williams v. International Paper Co.*, 227 F.3d 706, 712 (6th Cir.2000) (internal citations and quotation marks omitted). Nevertheless, "[d]eferential review is not no review, and deference need not be abject." *McDonald*, 347 F.3d at 172 (internal citations omitted). *Finazzi v. Paul Revere Life Ins. Co.*, 327 F.Supp.2d 790, 796 (W.D.Mich.2004) ("The Court is not obliged to rubber stamp [defendant's] termination of benefits where, considering all the evidence, its reasoning is not trustworthy"). "Rather, it requires the Court to review the quality and quantity of the evidence and the opinions on both sides of the issues." *Kovach v. Zurich American Ins. Co.*, 587 F.3d 323, 328 (6th Cir.2009) (citing *McDonald*, 347 F.3d at 172).

■ Review under the arbitrary and capricious standard allows the Court to determine whether Aetna's administrative decision to deny Plaintiff benefits was rational in light of the plan's provisions. *Williams*, 227 F.3d at 712. The decision is rational when supported by objective, medical evidence on the record. *Storms v. Aetna Life Ins. Co.*, 156 Fed.Appx. 756, 758 (6th Cir.2005).

### IV. Analysis

#### A. Social Security Administration

In order for Plaintiff to meet the LTD Plan Total Disability standard, his inability to perform twenty-five hours of sedentary employment a week has to be "supported by the objective, medical [evidence] in the record." *Storms*, 156 Fed.Appx. at 758. In comparison, the SSA defines disability as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

■ Although Plaintiff asserts that his October 23, 2008 SSA disability award is binding, Aetna, as an ERISA plan administrator does not have to utilize the SSA's definition of disability triggering claimant's

right to benefits. *See Raskin v. UNUM Provident Corp.,* 121 Fed.Appx. 96, 99 (6th Cir.2005). Rather, ERISA gives Aetna "discretionary authority to determine eligibility for benefits," governed by courts examination of benefits denials under the "arbitrary and capricious" standard of review. *Id.*

■ Further, in addition to ERISA granting Aetna authority to define eligibility for benefits, the Sixth Circuit Court has held that awards granted to Plaintiff by the SSA are not binding on plan providers. *Whitaker v. Hartford Life & Acc. Ins. Co.,* 404 F.3d 947, 949 (6th Cir.2005). Rather, the opinions of the Aetna-retained physicians and the decision of its own Review Committee are binding so long as the plan administrator's decision meet the arbitrary and capricious standard of review. *McDonald,* 347 F.3d at 168–69.

### B. Arbitrary and Capricious
#### 1. Medical Conditions

■ In regard to the LTD Plan Total Disability requirements, Plaintiff's discomfort and fatigue, as experienced when cleaning his father-in-law's gutters, is not objective medical evidence, and therefore does not represent Total Disability. Plaintiff's episode of "shortness of breath" was the consequence of performing a physically demanding activity, as the parties have agreed Plaintiff is prone to experience with over-exertion. Although Plaintiff is at risk of experiencing this type of impairment, as evidenced by Dr. Gubin's proposed restrictions on strenuous activity, the sedentary nature of employment required under the Total Disability standard involves sufficiently less physical exertion than is understood to bring Plaintiff discomfort and fatigue.

Moreover, despite some evidence that workplace stress could be detrimental to Plaintiff's health, where Dr. Gubin noted that "the usual activities of daily living do produce symptoms," this statement is offered without evidence of any such symptoms. As such, even if Plaintiff had subjectively reported experiencing symptoms that would not allow him to perform sedentary employment, his claims lack support from objective medical tests on record. *Storms,* 156 Fed.Appx. at 758. Because no such testing or medical evidence exists on record, Aetna's decision to deny Plaintiff benefits was neither arbitrary nor capricious in light of the medical records provided. *Id.*

#### 2. Other Conditions

While Plaintiff primarily suffers from Class III heart disease, his other conditions, such as uncontrolled diabetes, cannot be jointly considered for Total Disability status. *See Brien v. Metropolitan Life Ins. Co.,* Civil Action No. 11–10395–DJC, 2012 WL 4370677 at *11 (D.Mass. Sept. 21, 2012) (It is a reasonable interpretation of a plan's provisions where no condition is "independently disabling," that the conditions taken in the aggregate will not render Plaintiff "disabled and eligible for benefits"). That is to say, where neither Plaintiff's heart disease, his diabetes, nor lesser medical concerns independently produce symptoms sufficiently substantial to justify Total Disability, the conditions cannot be considered disabling in the aggregate without support of such an effect in Plaintiff's medical records. *See id.*

In addition, there is not adequate support for Total Disability where the combined effects of conditions are uncertain, as illustrated by lack of concurrence amongst the various physicians' opinions. *Id.* Because the June 19, 2009 stress test performed at the Stern Cardiovascular Center showed Plaintiff's heart conditions are stable, and offered no indication of Plaintiff's alleged ischemia, there remains

insufficient evidence of anything more than Plaintiff's chronic, yet stable heart disease and uncontrolled diabetes. As a result, the evidence suggesting Plaintiff's inability to engage in any compensable employment for twenty-five hours per week does not meet the quality and quantity of evidence required for Aetna's decision to be considered irrational. *Kovach,* 587 F.3d at 328.

Even if taken in the aggregate, the medical records infer that Plaintiff's conditions are not disabling in any way other than limiting performance of strenuous activities. Without any documentation, or even subjective complaint of shortness of breath, chest pain or palpitations in a sedentary environment, it cannot be found that the Aetna Review Committee's decision to deny Plaintiff further disability benefits was irrational in light of the LTD Plan provisions. *Yeager v. Reliance Standard Life Ins. Co.,* 88 F.3d 376, 382 (6th Cir.1996) (Holding that had Plaintiff made subjective complaints, there would be a need for medical documentation, because symptoms of disabling heart disease are "are easy to make but almost impossible to refute").

Given the physicians' reported findings, there is insufficient evidence for the Aetna Review Committee's decision to deny Plaintiff further disability benefits to be considered irrational in light of the LTD Plan provisions. Plaintiff has never subjectively reported experiencing symptoms in a sedentary work environment, and objective test results on record do not show that Plaintiff's conditions are independently disabling to the level of Total Disability.

ERISA's grant of discretionary authority to plan administrators to determine eligibility for receipt of benefits affords Aetna the right to deny Plaintiff further benefits so long as the decision was supported by "reasoned explanation, based on evidence." *Williams,* 227 F.3d at 712.

In this case, the reasoned explanation supporting Aetna's decision is based on a lack of medical evidence, where Plaintiff's physicians provided insufficient test results for Aetna to reasonably find that Plaintiff is unable to engage in any compensable employment for twenty-five hours per week.

■ As a result, the Aetna Review Committee decision to deny Plaintiff further disability benefits was rational in light of the LTD Plan provisions as reviewed under the arbitrary and capricious standard of review. *See Williams,* 227 F.3d at 712. Further, Plaintiff has no available remedy for breach of fiduciary duty where Defendants' decision to deny Plaintiff further disability benefits was neither arbitrary nor capricious. See *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) ("Court granted summary judgment for Firestone, holding that the company had satisfied its fiduciary duty as to the benefits ... because its decision not to pay was not arbitrary or capricious").

### C. Aetna Misjoinder

■ In its Motion for Summary Judgment [21], Defendant argues that Defendant Aetna Life Insurance Company has been misjoined. However, because the LTD Plan's denial of Plaintiff's benefits was not arbitrary or capricious, the argument is now moot, and the Court need not consider the argument here.

### V. Conclusion

For the reasons stated above, Defendants' Motion for Summary Judgment [21] is **GRANTED,** and Plaintiff's Cross–Motion for Summary Judgment [22] is **DENIED.**

Therefore,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [21] is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Cross–Motion for Summary Judgment [22] is **DENIED.**

**IT IS FURTHERED ORDERED** that this case is **CLOSED.**

**SO ORDERED.**