**Shelley BROWN, Plaintiff,**

v.

**FEDERAL EXPRESS CORPORATION; Federal Express Corporation Short Term Disability Plan; and Federal Express Corporation Long Term Disability Plan, Defendants.**

No. 2:13–cv–2411–JPM–tmp.

United States District Court,
W.D. Tennessee,
Western Division.

Signed May 28, 2014.

Jeremy Lyle Bordelon, Robert Scott Wilson, Eric Buchanan & Associates, Chattanooga, TN, for Plaintiff.

David P. Knox, Federal Express Corporation, Memphis, TN, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

JON P. McCALLA, District Judge.

Before the Court are the Motion for Summary Judgment by Defendants Federal Express Corporation, et al. ("Defendants"), filed on February 18, 2014 (ECF No. 20), and the Motion for Judgment on the Pleadings filed by Plaintiff Shelley Brown ("Plaintiff"), also filed on February 18, 2014 (ECF No. 21). For the reasons stated below, the Court GRANTS Defendants' Motion for Summary Judgment and DENIES Plaintiff's Motion for Judgment on the Pleadings.

## I. BACKGROUND

### A. Procedural Background

On June 12, 2013, Plaintiff filed her Complaint. (ECF No. 1.) Defendants filed their Answer on August 14, 2013. (ECF No. 7.) On February 18, 2014, Defendants filed the instant Motion for Summary Judgment. (ECF No. 20.) On that same day, Plaintiff filed the instant Motion for Judgment on the Pleadings. (ECF No. 21.) On March 10, 2014, Plaintiff filed a Response to the Motion for Summary Judgment. (ECF No. 22.) Defendants filed their Response to the Motion for Judgment on the Pleadings on March 10, 2014. (ECF No. 23.) The Court held a telephonic hearing on the instant motions on April 3, 2014. (ECF No. 24.)

### B. Factual Background

Plaintiff brought this action pursuant to Section 502 of the Employment Retirement Income Security Act of 1974 ("ERISA") (29 U.S.C. §§ 1001–1461) to obtain judicial review of a denial of short-term disability ("STD") and long-term disability ("LTD") insurance benefits under an ERISA welfare benefit plan. (*See* ECF No. 1.)

Plaintiff was employed by Defendants between 2005 and 2012 in Defendants' Memphis, Tennessee location. (ECF No. 1 ¶ 9; ECF No. 21–1 at PageID 1055.) Defendants' STD plan requires that any alleged disability be "substantiated by significant objective findings ... which are considered significant anatomical, physiological or psychological abnormalities which can be observed apart from the individual's symptoms." (ECF No. 10–5 at PageID 302.)

Plaintiff was diagnosed with "clinical Lyme disease" by Dr. Timothy Callaghan following lab tests conducted on April 13, 2012. (ECF No. 10–2 at PageID 82.) The tests came back negative under both the lab's and the Center for Disease Control's ("CDC") standards for Lyme disease, but Plaintiff showed "2 positive [and] 3 indeterminate Lyme bands." (*Id.*) After a second round of lab tests, conducted on May 26, 2012, Dr. Callaghan noted that Plaintiff's "tests [were] negative but again having several Lyme bands positive and indeterminate[,] [which] raises the suspicion of Lyme." (*Id.* at PageID 96.) A third round of tests, administered by Dr. Charles Crist on June 28, 2012, came back positive under

the testing lab's standards, but negative under the CDC's standards. (ECF No. 10–3 at PageID 162.)

On February 8, 2012, Plaintiff filed an application with Defendants for benefits under the STD plan, for which Aetna Life Insurance Company ("Aetna") served as claims paying administrator. (ECF No. 10–2 at PageID 56.) In considering Plaintiff's application, Aetna referred Brown's claim for benefits under the STD Plan to Dr. Wendy Weinstein for peer review of the clinical data. (See ECF No. 10–5 at PageID 281–84.) Dr. Weinstein reported that "the records have not documented specific physical examination abnormalities or underlying abnormal diagnostic studies that would support functional impairments from sedentary work." (ECF No. 10–5 at PageID 283.) On May 14, 2012, after receiving additional medical documentation from Plaintiff, Aetna referred Plaintiff's claim to Dr. Weinstein for further review. (ECF No. 10–5 at PageID 285–88.) Dr. Weinstein found that the "additionally submitted clinical information does not document functional impairments." (Id. at PageID 287.) Aetna denied Plaintiff's application for benefits under the STD plan on May 24, 2012. (ECF No. 10–2 at PageID 56–58.)

Plaintiff appealed Aetna's denial of her claim on November 19, 2012. (ECF No. 10–2 at PageID 59.) In January 2013, in considering Plaintiff's appeal, Aetna referred Plaintiff's claim to Dr. Steven Swersie for peer review. (ECF No. 10–5 at PageID 289–94.) Dr. Swersie indicated that "the diagnosis of Lyme disease … was not documented by the laboratory tests." (ECF No. 10–5 at PageID 294.) In addition, he stated that "there is insufficient objective clinical evidence for the presence of any functional impairment." (Id.) On February 8, 2013, Aetna denied Plaintiff's appeal of her application for benefits under the STD plan, noting that the "benefit was denied because there is a lack of significant objective findings to substantiate a claim under the Plan." (ECF No. 10–1 at PageID 48.)

In total, five physicians examined either Plaintiff or Plaintiff's medical records and offered opinions as to her disability status. Three of the five determined her to be disabled in some capacity. Dr. Michael Wallace, Plaintiff's treating family physician, determined that she would need several weeks off work in early 2012 due to clinical diagnoses of fibromyalgia and postpartum depression. (ECF No. 10–4 at PageID 261.) Drs. Callaghan and Crist determined her to be disabled due to "clinical" Lyme disease. (ECF No. 10–2 at PageID 82; ECF No. 10–3 at PageID 162.) Dr. Callaghan also identified Hashimoto's thyroiditis based upon an abnormal laboratory result. (ECF No. 10–4 at PageID 272.) After reviewing the Administrative Record before them, both Drs. Weinstein and Swersie found no objective medical evidence of a disability that would entitle Plaintiff to STD benefits. (ECF No. 10–5 at PageID 281–94.)

## II. STANDARD OF REVIEW

"Under ERISA, when a plan administrator … has the discretionary authority to determine eligibility for benefits, courts review a decision to deny benefits under the highly deferential arbitrary and capricious standard of review." Smith v. Fed. Express Corp. Long Term Disability Plan, 991 F.Supp.2d 992, 996 (W.D.Tenn. 2014) (quoting McDonald v. Western–Southern Life Ins. Co., 347 F.3d 161, 168–69 (6th Cir.2003)) (internal quotation marks omitted). "The arbitrary and capricious standard is the least demanding form of judicial review of administrative action." Williams v. Int'l Paper Co., 227 F.3d 706, 712 (6th Cir.2000).

■ "Nevertheless, deferential review is not no review, and deference need not be abject." *Smith*, 991 F.Supp.2d at 996 (quoting *McDonald*, 347 F.3d at 172) (internal quotation marks omitted). Therefore, the arbitrary and capricious standard "is not a rubber stamp of the administrator's : decision." *Kovach v. Zurich Am. Ins. Co.*, 587 F.3d 323, 328 (6th Cir.2009) (quoting *Glenn v. Metro. Life Ins. Co.*, 461 F.3d 660, 666 (6th Cir.2006)). "Rather, it requires the Court to review the quality and quantity of the evidence and the opinions on both sides of the issues." *Kovach*, 587 F.3d at 328 (quoting *McDonald*, 347 F.3d at 172) (internal quotation marks omitted).

■ Under the arbitrary and capricious standard, "the Court analyzes the decision to deny benefits to ensure that the denial is the result of a deliberate, principled reasoning process ... supported by substantial evidence." *Morrison v. Regions Fin. Corp.*, 941 F.Supp.2d 892, 900 (W.D.Tenn.2013) (quoting *Senzarin v. Abbott Severance Pay Plan for Emps. of KOS Pharm.*, 361 Fed.Appx. 636, 640 (6th Cir.2010)) (internal quotation marks omitted). "The Court must decide whether the plan administrator's decision was rational in light of the plan's provisions." *Williams*, 227 F.3d at 712. When a plan administrator's decision to deny short term disability is "supported by objective, medical evidence on the record," that decision is rational. *Smith*, 991 F.Supp.2d at 996 (citing *Storms v. Aetna Life Ins. Co.*, 156 Fed.Appx. 756, 758 (6th Cir.2005)). "Even if the Court would not have come to the same conclusion as the Plan Administrator, as long as there is a reasonable basis for the decision, it must be upheld." *Morrison*, 941 F.Supp.2d at 900–01 (quoting *Moon v. Unum Provident Corp.*, 405 F.3d 373, 379 (6th Cir.2005)).

## III.   ANALYSIS

The STD and LTD plans give discretion to the plan administrator in granting STD and LTD benefits. (ECF No. 10–8 at PageID 657.) The Court, therefore, reviews Aetna's decision under the arbitrary and capricious standard.

### A.   Aetna's Denial of STD Benefits

According to Defendants' STD Plan, Plaintiff must show a medical disability "substantiated by significant objective findings." (ECF No. 10–5 at PageID 302.) Those findings must be in the form of "a test or medical exam," and they must show "significant anatomical, physiological[,] or psychological abnormalities which can be observed apart from the individual's symptoms." (*Id.*) Moreover, "[t]he burden of proof for establishing a disability is on the Covered Employee." (*Id.* at PageID 303.)

#### 1.   Medical Conditions

■ In support of her Motion for Judgment on the Pleadings, Plaintiff argues that she has established a sufficient medical basis to establish a disability due to Lyme disease and Hashimoto's thyroiditis for the purposes of the STD plan. (ECF No. 21–1 at 13.) Specifically, she argues that not one of the lab tests was entirely negative, and that her physicians based their diagnoses on an "objective, laboratory and clinical observation basis." (*Id.* at 14.) Thus, Plaintiff argues that her physicians' diagnoses constitute "significant objective findings" that substantiate her disability claim, and Aetna's decision to deny her benefits based on "the opinion of a single non-examining medical consultant" was arbitrary and capricious. (*Id.* at 14–15.)

In response, Defendants argue that "Drs. Crist and Callaghan's diagnosis of Lyme disease is questionable" because "[n]ot once was Brown's Lyme testing pos-

itive." (ECF No. 23 at 3–4.) Thus, Defendants argue that Plaintiff's doctors' opinions were "not sufficient to establish her entitlement to benefits, as a qualifying disability must be supported by abnormalities 'which can be observed apart from the individual's symptoms.' " (*Id.* at 4 (citing ECF No. 10–5 at PageID 302).)

The Court finds that Aetna's decision to deny benefits was not arbitrary and capricious. The medical record provided by Plaintiff "does not meet the quality and quantity of evidence required for Aetna's decision to be considered irrational." *Smith,* 991 F.Supp.2d at 998 (citing *Kovach,* 587 F.3d at 328). Moreover, "the opinions of Aetna retained physicians and the decision of its own Review Committee are binding so long as the plan administrator's decision meet the arbitrary and capricious standard of review." *Id.* (citing *McDonald,* 347 F.3d at 168–69).

Dr. Callaghan based his diagnosis of "clinical [L]yme disease" on two primary pieces of evidence: Plaintiff's "multitude of symptoms," and the negative lab test "having 2 positive and 3 indeterminate [L]yme bands." (ECF No. 10–2 at PageID 82.)

The STD plan specifically requires evidence of "abnormalities which can be observed apart from the individual's symptoms." (*Id.*) Thus, "even if Plaintiff had subjectively reported symptoms" that would prevent her from being able to continue her work, such reported symptoms, alone, "lack support from objective medical tests on record." *Smith,* 991 F.Supp.2d at 997. For the purposes of establishing disability under the STD plan, Defendants can rationally determine that Plaintiff's symptoms, alone, do not constitute "significant objective findings." (ECF No. 10–5 at PageID 302.)

Moreover, the CDC "recommends a two-step process of testing a patient's blood for the presence of Lyme disease bacteria an-tibodies." (ECF No. 20–1 at 8) (citing CDC, *Lyme Disease, available at* http://www.cdc.gov/lyme/ (last visited on February 6, 2014).) The two tests are designed to be administered together, and "[r]esults are considered positive only if [the two] tests are both positive." CDC, *Lyme Disease, available at* http://www.cdc.gov/lyme/.

The first test is known as an "EIA" (enzyme immunoassay) or an "IFA" (indirect immunofluorescence assay). *See id.* The CDC notes that skipping the EIA/IFA tests "will increase the frequency of false positive results and may lead to misdiagnosis and improper treatment." *Id.* Here, the Administrative Record contains no evidence showing that Plaintiff was ever subjected to either the EIA or IFA test before her diagnosis. (ECF No. 20–1 at 9.)

The Administrative Record does, however, contain the results of the second test, the "IgM Western Blot" (or "immunoblot") test, administered on three occasions. (*See* ECF No. 10–2 at PageID 82–88; ECF No. 10–2 at PageID 96–99.) "The body produces IgM antibodies within the first few weeks of infection." CDC, *Lyme Disease, available at* http://www.cdc.gov/lyme/. Therefore, according to the CDC, a "positive IgM immunoblot is only meaningful during the first 4 weeks of illness." *Id.*

Dr. Callaghan supervised Plaintiff's first two IgM Western Blot tests, conducted on April 13, 2012 and May 26, 2012, respectively. (ECF No. 10–2 at PageID 82–88; ECF No. 10–2 at PageID 96–99.) On both occasions, the results came back negative under both the lab's and the CDC's standards. (*Id.*) The test results did indicate the presence of some, but not all, of the indicative antibodies in Plaintiff's blood. (*Id.*) These negative test results, coupled with Plaintiff's reported symptoms, led Dr.

Callaghan to diagnose her with "clinical Lyme disease." (*Id.*)

Dr. Crist supervised Plaintiff's third round of IgM Western Blot testing, administered on June 28, 2012, twenty-one weeks after Plaintiff's first work absence and past the "meaningful" timeframe recommended by the CDC. (*See* ECF No. 10–3 at PageID 157–58.) This test came back positive for IgM antibodies under the lab's standard but negative under the CDC's standard. (*Id.*)

Interpreting the results of a lab test measuring Plaintiff's thyroglobulin levels on April 13, 2012, Dr. Callaghan diagnosed Plaintiff with Hashimoto's thyroiditis. (ECF No. 10–2 at PageID 80.) In her peer review report, Dr. Weinstein questioned the accuracy of the diagnosis and claimed that "this diagnosis in and of itself would not preclude the claimant from performing sedentary occupation." (ECF No. 10–5 at PageID 284.) Therefore, Dr. Weinstein continued, Dr. Callaghan's diagnosis "fails to support functional impairments from the claimant's sedentary occupation." (*Id.*)

Plaintiff argues that it is unreasonable for Defendants, and, by extension, the Court, to rely on the CDC standards for diagnosing Lyme disease because "these criteria are not included in the administrative record, and there is no evidence that either Aetna itself or its hired file reviewers ever consulted these criteria." (ECF No. 22 at 4.) Plaintiff argues that the Court "may consider the parties' arguments concerning the proper analysis of the evidentiary materials contained in the administrative record, but may not admit or consider any evidence not presented to the administrator." (*Id.* at 4–5 (quoting *Wilkins v. Baptist Healthcare System, Inc.,* 150 F.3d 609, 619 (6th Cir.1998)).)

In response, Defendants argue that Rule 201(b) of the Federal Rules of Evidence permits the Court to take "judicial notice of the background information on Lyme disease, its diagnosis, and its treatment ... from the official CDC website" because the "facts set forth ... are not subject to reasonable dispute and are capable of accurate and ready determination by visiting the CDC's website, a source whose accuracy cannot reasonably be questioned." (ECF No. 20–1 at 8 n. 1.)

The Court agrees with Defendants that Rule 201(b) of the Federal Rules of Evidence permits the Court to take judicial notice of the standards and procedures propagated by the CDC in determining whether Aetna's physicians' medical determinations were arbitrary and capricious. (*See also* ECF No. 10–3 at PageID 162 (indicating that the CDC laboratory test results were negative).)

"ERISA's grant of discretionary authority to plan administrators to determine eligibility for receipt of benefits affords Aetna the right to deny ... benefits so long as the decision was supported by 'reasoned explanation, based on evidence.'" *Smith,* 991 F.Supp.2d at 998 (quoting *Williams,* 227 F.3d at 712). Here, Plaintiff's physicians "provided insufficient test results for Aetna to reasonably find" that Plaintiff is disabled. *Smith,* 991 F.Supp.2d at 998. Because her physicians' diagnoses were based on the combination of Plaintiff's subjective reporting of her symptoms, two negative lab tests, and one positive but questionable lab test, the Court finds that Aetna's conclusion that this evidence failed to adequately substantiate Plaintiff's alleged disability was not arbitrary and capricious.

### 2. Intravenous Antibiotic Regimen

■ It is undisputed that, in 2012, Drs. Callaghan and Crist prescribed Plaintiff a regimen of intravenous antibiotics. (*See*

ECF No. 10–1 at PageID 49 (indicating Aetna's awareness of Plaintiff's prescription).) On December 14, 2012, Dr. Crist extended that prescription and directed that the antibiotics be administered "every 8 hours for 4 weeks." (ECF No. 10–3 at PageID 159.) In its letter denying Plaintiff's appeal on February 8, 2013, Aetna stated that "there is nothing in the submitted documentation that indicates the schedule of administration could not be done around a work schedule so this would not interfere with your client's ability to work." (ECF No. 10–1 at PageID 50.) In a written statement prepared for her attorney, Plaintiff alleged that, after denying her claim for STD benefits, Defendants refused to allow her to return to work with her I.V. equipment. (ECF No. 10–2 at PageID 73.) She further alleged that Defendants advised her that she was not allowed to bring "any medical supplies to work" and that she would have to fill out a "Reasonable Accommodation Request Form" in order to administer the antibiotics during office hours. (Id. at PageID 73–74.)

Plaintiff argues that Aetna's "assumption that [Plaintiff]'s need for intravenous administration could be accommodated in the workplace, unsupported by any evidence or data and contrary to [Plaintiff]'s own account, is arbitrary and capricious." (ECF No. 21–1 at 12–13.) Plaintiff cites *Elliott v. Metropolitan Life Ins. Co.,* 473 F.3d 613, 618–19 (6th Cir.2006) in support of her argument that "conclusory medical and vocational opinions that fail to provide evidence or reasoning to support [a] conclusion [are] insufficient to support [a] denial of benefits." (Id. at 12.) Therefore, Plaintiff argues that Defendants acted arbitrarily and capriciously "by denying her disability benefits while refusing to allow her to bring her prescribed intravenous antibiotics into the workplace." (Id. at 11.)

In response, Defendants argue that requiring Aetna to support its determination that the record lacked sufficient evidence to establish that Plaintiff's I.V. regimen interfered with her ability to work would improperly "shift the burden of proof away from Plaintiff, where it legally belongs." (ECF No. 23 at 2–3.) In addition, Defendants argue that "[t]he only evidence upon which Plaintiff relies to support her contentions is her own self-serving and unsworn statement regarding her treatment." (Id. at 2.) Therefore, they argue that this unsworn statement "does not satisfy the STD Plan's requirement that a disability be substantiated by significant objective findings." (Id.)

The Court agrees with Defendants that requiring Aetna to provide evidence to support its claim would improperly shift the burden of proof. According to the STD plan's provisions, the "burden of proof for establishing a disability" lies with the Plaintiff. (ECF No. 10–5 at PageID 303.) Thus, to establish that her antibiotic regimen entitled her to disability benefits, Plaintiff must substantiate her claim with "significant objective findings" that show "significant anatomical, physiological[,] or psychological abnormalities which can be observed apart from the individual's symptoms." (Id. at PageID 302.) Plaintiff's unsworn personal statement to her attorney does not constitute "significant objective findings." (Id.)

Moreover, the Court finds that *Elliott* is not controlling in this case. In *Elliott,* the United States Court of Appeals for the Sixth Circuit found that a plan administrator's conclusion that an employee was not disabled was arbitrary and capricious because that conclusion lacked "any reasoning as to why [the] diagnoses would permit her to function in the workplace." 473 F.3d at 619. The Sixth Circuit acknowledged that "[t]he question in any

given disability case on 'arbitrary and capricious' review is whether a plan can offer a reasoned explanation, based on the evidence, for its judgment." *Id.* at 617. Thus, a plan administrator "could have made a reasoned judgment *only if it relied on medical evidence.*" *Id.* at 618 (emphasis added). In the instant case, Aetna could not rely on medical evidence in determining whether Plaintiff's I.V. regimen interfered with her work because the administrative record contained no objective findings to support her claim that the prescription was incompatible with her work schedule.

Because the record lacks "significant objective findings" as to whether Plaintiff's I.V. regimen entitled her to STD benefits, the Court finds that Plaintiff failed to meet her burden of proof. Therefore, the Court finds that Aetna's denial of benefits was not arbitrary and capricious.

### B.  Aetna's Denial of LTD Benefits

Under Defendants' LTD plan, a Covered Employee will be denied long-term disability benefits "for any illness or injury for which [she] did not receive 26 weeks of STD benefits." (ECF No. 20–3 at PageID 921.) According to the plan, "LTD benefit payments begin once you have exhausted your STD benefit period." (*Id.* at PageID 918.)

Defendants' LTD plan for long-term disability benefits requires any claimant to have received short-term disability benefits under the STD plan for at least 26 weeks. (*See id.* at PageID 921.) Therefore, since Defendants' denial of benefits under the STD plan was not arbitrary and capricious, the Court finds that their denial of long-term benefits under the LTD plan was not arbitrary and capricious.

### C.  29 U.S.C. § 1132(c)

In addition to review of Defendants' denial of STD and LTD benefits, Plaintiff also seeks a penalty from Defendants because of their failure to supply a copy of the LTD Plan to Plaintiff upon her request. (ECF No. 1 at ¶¶ 39–43.) In a letter dated August 27, 2012, Defendants notified Plaintiff that they would provide a copy of the LTD plan for a "copying charge" of $22.25, or 25 cents per page. (ECF No. 20–3 at PageID 1038.) The letter explained that it was Defendants' policy to only provide copies of the LTD plan "free of charge" once "an adverse benefit determination has been made." (*Id.*) There is no evidence in the administrative record that Plaintiff ever paid the copying charge. (*See* Administrative Record, ECF No. 10–1 to 10–8; Perrine Decl. Ex. A, ECF No 20–3.) It is undisputed that there was an adverse benefit determination made, and that Defendants did not supply Plaintiff with a copy of the LTD Plan after her request. (*See* ECF No. 20–2 at PageID 731; *See also* ECF No. 22 at PageID 1076 ("Insofar as Defendants recite *facts,* Plaintiff has no quarrel with the facts recited in Defendants' statement.").)

Under 29 U.S.C. § 1132(c)(1)(B), the Court has the discretionary authority to impose a penalty, up to $100, if "any administrator ... fails or refuses to comply with a request for information which such administrator is required by this subchapter to furnish to a participant or beneficiary." Under 29 U.S.C. § 1024(b)(4), an "administrator may make a reasonable charge to cover the cost of furnishing" a copy of a benefits plan. In determining whether a penalty is appropriate, courts "have considered various factors, including bad faith or intentional conduct on the part of the administrator, the length of the delay, the number of requests made and documents withheld, and the existence of

any prejudice to the participant or beneficiary." *See Devlin v. Empire Blue Cross and Blue Shield,* 274 F.3d 76, 90 (2d Cir. 2001) (internal quotation marks omitted).

Defendants argue that Plaintiff "is not entitled to any penalty" because "there is no evidence that Defendants operated in bad faith when they required payment of a permissible copying fee before providing the LTD Plan, and Brown never paid the copying fee." (ECF No. 20–1 at 20.) Additionally, Plaintiff "only requested the LTD Plan twice." (*Id.* at 20.) Finally, Defendants argue that Plaintiff "was not prejudiced by the withholding of the document" because "[s]he had already been informed that her claim for STD benefits was denied." (*Id.*) Therefore, since she had not received the requisite 26 weeks of STD benefits, she "was not eligible for or entitled to any benefits under the LTD plan." (*Id.*)

The Court agrees with Defendant that the factors weigh against Plaintiff, and it finds that Defendants' withholding of the requested LTD documents did not occur in bad faith and did not unduly prejudice the Plaintiff. Additionally, because Aetna had already denied Plaintiff's claim for disability benefits under the STD plan at the time of her request for the LTD documents, the Court finds that the "copying charge" of 25 cents per page was reasonable. Therefore, a penalty under 29 U.S.C. § 1132(c) is not appropriate under the facts in this case.

## IV. CONCLUSION

Aetna's decision denying Plaintiff disability benefits under the STD plan and LTD plan was not arbitrary and capricious. Additionally, the Plaintiff is not entitled to a penalty under 29 U.S.C. § 1132(c). Therefore, Defendants' Motion for Summary Judgment is GRANTED, and Plaintiff's Motion for Judgment on the Pleadings is DENIED.